J. C. CURRY v. THE KANSAS & COLORADO PACIFIC
RAILWAY COMPANY.

No. 9195.

1. CONSOLIDATED RAILWAY COMPANY—*by answering to action as
successor of original company, waives formal revivor.* When,
after the institution of suit against a railway company, its legal
existence is terminated by consolidation with other like companies,
and the action, in consequence, abates, a new petition, which ap-
pears to be the commencement of a new action and not a continu-
ation of the old one, is filed against the consolidated company as
successor to the liabilities of the others, and a summons in the
form of original process is issued against, and served upon, the
consolidated company, and it demurs to such petition and moves
to strike it from the files, but delays objection to the lack of formal
revivor of such first action and its substitution thereto until its
answer to such petition is filed, it will be deemed to have waived
the lack of such revivor and substitution, and will be held as de-
fendant to the suit.

2. EVIDENCE HELD SUFFICIENT — *of railway company's contract to procure plaintiff passes from another railway company.* Evidence examined, and found to prove a valid contract, upon good consideration, by one railway company to procure passes for a person over the line of another railway company, full performance by such person, and a breach of the same by such first-mentioned company.

3. JOINT CONTRACT — *by two persons, compensation to each distinct, may be sued on separately by either.* A contract entered into and performed jointly by two or more persons, the compensation for the performance of which is separate and distinct as to each of such persons, may be sued upon separately by each of them, to recover the amount due to him or the damages sustained by him.

4. RAILWAY PASSES — *issuing of, for valuable consideration not prohibited by Interstate Commerce Act.* The Interstate Commerce Act does not prohibit the issuing of railway passes upon a moneyed or other valuable consideration, but only prohibits free transportation.

5. ———— *contract to procure, for party annually during life, may be sued on for breach any year.* A contract to issue or to procure the issuing of railway passes, annually through the life of the promisee, is not an entire contract, but is divisible by yearly renewals, and may be sued upon for each successive breach; and the measure of damages for the breach of the same is the value of the transportation to such promisee during the years the breach has occurred.

Error from Osage District Court. Hon. William Thomson, Judge. Opinion filed April 10, 1897. *Reversed.*

*J. W. Lord* and *J. W. Deford*, for plaintiff in error.

*Waggener, Horton & Orr*, for defendant in error.

DOSTER, C. J. The Missouri Pacific Railway Company was at one time involved in the proceedings in this cause as a defendant thereto, but as it is not so now its connection therewith need not be noticed in a statement of the facts.

January 13, 1890, the plaintiff in error, as plaintiff below, filed his petition against the Council Grove, Osage City & Ottawa Railway Company, which, Jan-

uary 10, 1891, was, with a number of other railroad companies, consolidated into a new corporation, called the Kansas & Colorado Pacific Railway Company,— the defendant in error above named.    On June 8, 1891, the fact of such consolidation, and the consequent legal death of the Council Grove, Osage City & Ottawa Railway Company, having been stated and proved to the court, the plaintiff took leave to amend his petition, and, August 11, 1891, accordingly filed an amended petition against the consolidated company alone. This amended petition contained no reference to the former one, nor to the abatement of the action in consequence of the consolidation; but, except in being designated an "amended petition," appeared to be in all particulars such as might have been filed at the commencement of the suit.

On the same day, the plaintiff caused to be issued and served upon the defendant, the consolidated company, a summons in the same form as one for the commencement of a new action.

September 19, 1891, the defendant filed to this amended petition a demurrer alleging all the statutory grounds of objection; which demurrer, November 19, 1891, was sustained.    Upon the sustaining of the demurrer, the plaintiff took leave to file a second amended petition, which he filed December 19, 1891. This petition contained no reference to the one first filed nor to the abatement of the action caused by the consolidation aforesaid, but, except in being designated a "second amended petition," was, like the last preceding one, in form and allegations, appropriate to the commencement of a new action.    Upon the filing of this second amended petition, a summons was again issued and served upon the defendant, the consolidated company, in the form of original process appropriate to the commencement of a new action.

January 19, 1892, the defendant moved the court for an order to strike the second amended petition from the files, for the reason that it was not within the terms of the order allowing it but was for a new cause of action. This motion, March 7, 1892, was overruled.

On March 14, 1892, the defendant filed to the second amended petition a demurrer alleging all the statutory grounds of objection; which demurrer, June 22, 1892, was overruled; and thereafter, July 9, 1892, the defendant filed its answer to the second amended petition. Among other things, this answer alleged the consolidation of the original defendant, the Council Grove, Osage City & Ottawa Railway Company, with the other companies, the consequent abatement of the original action, and the lack of any formal order of revivor against the consolidated company, the present defendant; and this was the first specific objection upon that score thus far made in the proceedings. To this answer a reply was filed, July 22, 1892; and, upon the issues thus raised by the second amended petition, the answer and the reply, the cause was tried. At the conclusion of the plaintiff's evidence a demurrer thereto was sustained.

Upon this record, the defendant objects to the court's jurisdiction over it, because of the lack of formal proceedings of revivor and substitution after the abatement of the original action caused by the consolidation of the original defendant with other companies. A sufficient answer to this objection is, that the defendant has waived formal revivor and substitution. The plaintiff, 1. Formal revivor waived, when. without objection on that score, filed an amended petition, and afterwards a second amended petition, neither of which indicated that it was in continuation of the action originally brought against the Council

Grove, Osage City & Ottawa Railway Company. For aught that appears on the face of these petitions, they were filed in a suit originally begun against the Kansas & Colorado Pacific Railway Company. The demurrers to these petitions did not raise the question of the abatement of the original action by the consolidation of the original defendant with the other companies, nor of the lack of revivor and substitution against the present defendant; for a demurrer raises only objections which appear upon the face of the pleading attacked. Neither did the motion to strike from the files raise these objections. That motion specified as a reason for striking out the second amended petition nothing but non-compliance with the order under which it was filed. Not until the defendant answered, was the question of the lack of revivor and substitution raised in the case. It was then too late. Such an objection is like any other objection to jurisdiction. It must be made before appearance to the merits; for such appearance is a submission to jurisdiction. Instead of demurring to the first amended petition, the defendant should. have moved to strike it from the files for the reason that no order reviving the original action had been made. By filing a demurrer thereto, it pleaded to the legal merits of the cause of action stated in the petition. This was a waiver of the defect which is now urged. *W. & W. Rly. Co. v. Quinn,* 57 Kan. 737. However, we do not wish to be understood as holding that a motion to strike from the files would, under the circumstances, have been available, but only as suggesting this as the proper practice if the irregularity in question was remediable at all; because it can be urged, with much force, that the filing of the first amended petition and the issuance and service of summons upon the present defendant, in the

form appropriate to the commencement of a new action, was an abandonment by the plaintiff of the old proceeding against the Council Grove, Osage City & Ottawa Railway Company, and the institution of an entirely new suit.

The plaintiff's cause of action is for the breach of a contract by the original Council Grove, Osage City & Ottawa Railway Company to issue to him or procure for him annual passes over the Missouri Pacific Railway system, of which it was, or expected to be, a part. The agreement is evidenced by the following document and letters :

"QUENEMO, KAN., August 30, 1886.

"In consideration of one dollar in hand paid, receipt of which is hereby acknowledged, and for other valuable consideration hereinafter set forth, we, the undersigned, hereby agree and bind ourselves unto the Council Grove, Osage City & Ottawa Railway Company, that we shall on the thirtieth day of September, 1885, sell, transfer and convey by proper warranty deed a fee-simple title to the following described pieces and parcels of land, to wit: *First*, a strip and tract of land two hundred feet in width, of which the center line of the Council Grove, Osage City & Ottawa Railway Company's right of way, as the same is now surveyed and definitely located, is the center; commencing on the south line of N.W. quarter of section number 3, township 17, range 18, in Osage County, Kansas, and running thence in a northeasterly direction over and across said quarter-section to the east line of the same, thence in a continuous line in said northeasterly direction to the east line of the west half of the northeast quarter of section 3, township 17, range 17, county and state aforesaid — this conveyance to be made to said above-named Railway Company. *Second*, an undivided one-fourth interest in the southeast quarter of the northeast quarter, and southwest quarter of the northeast quarter, of section 3, township 17, range 17, county and state aforesaid. This last-mentioned conveyance to be made to H. M. Hoxie, president of aforesaid Railway Company. A

part of consideration of these last above mentioned conveyances being, that said Railway Company shall locate on said land, so above described, one of its stations, with depot, stock yards, side-track and necessary appurtenances to a railway station. We, the undersigned, further agree, that in addition to the above-mentioned conveyances we will, upon request of said Railway Company, and upon being furnished by said Company with a reasonable written assurance that the Kansas, Nebraska & Dakota Railroad, which crosses said Council Grove, Osage City & Ottawa Railroad line on the land above mentioned, shall be, when constructed, operated by, and in connection with, the Missouri Pacific Railway system, and that a water station shall be located and maintained by one of said railway companies on said land, sell, transfer and by proper warranty deeds, convey an additional one-fourth interest in the tracts of land above described to the said H. M. Hoxie.

"Witness our hands this thirtieth day of August, A. D. 1886.           C. F. CURRY.
                                            J. C. CURRY.
                                          BENJ. CURRY."

"QUENEMO, KAN., August 30, 1886.

"*Col. A. S. Everest:* DEAR SIR — I hereby request of you three annual passes over the Missouri Pacific system, to be renewed at the expiration of the year and so on from year to year until we cry enough; the passes to be made to C. F. Curry, J. C. Curry and Benj. Curry. This request is made in pursuance of an agreement made this day with Mr. Macauley, the major part of which is in writing and includes a transfer to Mr. Hoxie of an interest in —— acres of land at your crossing of the Kansas, Nebraska & Dakota railroad.          Yours truly,     J. C. CURRY."

"THE MISSOURI PACIFIC RAILWAY COMPANY,
                    LEGAL DEPARTMENT.
EVEREST & WAGGENER,                    AARON S. EVEREST.
   *General Attorneys.*                     B. P. WAGGENER.
                                        FRANK EVEREST.

ATCHISON, KAN., September 6, 1886.

"*J. C. Curry, Esq., Quenemo, Kansas:* DEAR SIR — I am in receipt of your letter of the thirtieth ult., and note contents. I will give the matter of passes atten-

tion and forward them to you whenever the title to the property is straightened up. I shall not fail to reciprocate in any way that I can.

Yours respectfully,   AARON S. EVEREST."

Whatever obligation was imposed upon the Council Grove, Osage City & Ottawa Railway Company by the above-quoted documents and letters, now rests upon the present defendant by virtue of the statute and the agreement of consolidation.

It is first urged that there was no authority in the Council Grove, Osage City & Ottawa Railway Company, or in Mr. Everest representing it, to contract for passes over the Missouri Pacific Railway, and no consideration for the issuing of passes by the Missouri Pacific Railway Company. This is the contention stated in the language of counsel for defendant. If, however, it be admitted that a contract was really made by Mr. Everest, representing the Council Grove, Osage City & Ottawa Railway Company, to procure passes over the Missouri Pacific Railway, the questions of his authority to bind such last-named road and of the consideration moving to it become immaterial; for if there was power in the Council Grove, Osage City & Ottawa Railway Company to make such contract, and authority in Mr. Everest to execute it on behalf of the company, and a sufficient consideration moving to it for the making of it, it is a valid contract, so far as the Council Grove, Osage City & Ottawa Railway Company and its successor, the Kansas & Colorado Pacific Railway Company, are concerned; and if the Missouri Pacific Railway Company will not aid it in carrying out such agreement, the contracting company, must suffer the ordinary penalties imposed upon those who undertake to procure the performance of an act by one person for the benefit of another and

*2. Evidence sufficient to prove valid contract.*

then fail in the undertaking. There is in the agreement disclosed by the above-quoted papers nothing immoral, contrary to public policy, nor violative of any statute known to us. Indeed no such claim is made. The question, therefore, is one of authority in Mr. Everest, as a representative of the Council Grove, Osage City & Ottawa Railway Company, and of the consideration moving to that company; and not of authority in him as a representative of the Missouri Pacific Railway Company, nor of the consideration moving to it.

It is clearly shown by the evidence that the Council Grove, Osage City & Ottawa Railway Company was procuring a right of way and other property rights in Osage County, and that, in such matter, the law firm of Everest & Waggener was employed in its behalf by a resolution of its board of directors, reading as follows:

"It is moved and carried that Everest & Waggener, of Atchison, Kan., be, and the same are, hereby employed, appointed and denominated as the general attorneys for this company. It is moved and carried that the general attorneys of this company proceed at once to acquire, and purchase for this company, all necessary grounds, lands, or property necessary for the right of way, tracks, side-tracks, depots, workshops, water stations, elevators, coal house, cattle yards, and all other lands for terminal facilities, or for the purposes of construction and operation of said railroad, and to take the necessary proceedings to acquire all said lands by condemnation or otherwise."

It is likewise shown that H. G. Macauley was a clerk in the employ of Mr. Everest, and that, August 28, 1886, two days before the execution of the contract for conveyance by the Currys, Mr. Everest wrote Mr. C. F. Curry as follows:

"ATCHISON, KAN., August 28, 1886.
"*C. F. Curry, Esq., Quenemo, Kan.:* DEAR SIR—I am in receipt of yours of the twenty-eighth inst., and

note contents. Mr. Macauley I suppose is now at your place, and hope you will take up the town-site matter and adjust it with him. The quicker it is done the better. He has full authority to settle the matter, and it is impossible to tell when I will be along the line. I have to go to Salina on Monday and may be gone a considerable portion of next week. I will see you at the earliest time possible.

Yours respectfully,

AARON S. EVEREST. S."

Then followed the contract of August 30, 1886, the letter of the plaintiff to Mr. Everest, of the same date, and Mr. Everest's reply of September 6. In addition to all this, Mr. Macauley wrote to Mr. Everest, August 30, 1886, as follows :

QUENEMO, KAN., August 30, 1886.

"*Col. A. S. Everest, Atchison, Kan.:* DEAR COLONEL — Please understand that the statement about passes in letter of Mr. J. C. Curry of this date is a part of our arrangement about town site at their place. It was made separate from the contract to guard against being brought before parties who should not know of the possibilities of such arrangements.

Yours respectfully, H. G. MACAULEY."

This letter, however, on the ground that Mr. Everest, for some reason unexplained by any one, had never seen it, was rejected by the court. No question is raised, nor, indeed, can any question be raised, as to this agreement being a private one between Mr. Everest and the Currys, about a "town site," to which the Company was not or could not be made a party. The term used was a usual and proper one to designate the land outside the right of way, which the Company desired, and which, as shown by the fact that it afterward sent a corps of engineers to survey the land into town lots, it really designed for town-site purposes. It might be admitted that no authority existed in Mr. Everest to bind the Company by an agreement for the

purchase of lands for town-site purposes : he neverthe-less had authority to contract for a right of way, and did so contract; and such right of way was a suffi-cient consideration to uphold such contract.   But the Company is estopped from making that claim.   It ac-cepted a deed for the town-site land, and now claims title thereto, as will presently be noticed.   But, over and beyond all this, it ratified Mr. Everest's agreement by procuring for the plaintiff an annual pass for the year 1887.   On the whole evidence on this point, there is not a shadow of doubt that Mr. Everest had au-thority to make the contract in question, and did make it as alleged by the plaintiff.

It is claimed that the plaintiff has not complied with the terms of the contract of conveyance so as to entitle him to sue for damages for its breach.   This claim is rested upon the following grounds : *First*, the contract for conveyance calls for a deed from the Currys, instead of which it was executed by one Aggie Oakley and husband ; *second*, a condition to the issuance of passes, stated in Mr. Everest's letter of September 6, was, that the title to the land should be "straightened up ; " instead of which there were two mortgages, one for eight hundred dollars and one for eighty dollars, the first of which was not released until after the commencement of the suit, and the second of which still remains uncanceled ; *third*, that all the lands agreed to be conveyed have not been so conveyed.

A sufficient answer to the first objection is, that the Company accepted a conveyance from the Oakleys in lieu of the one promised by the Currys, and cannot, therefore, be heard to complain.   A like answer to the second objection is, that the larger mortgage, the one for eight hundred dollars, was satisfied before the present defendant was made a party to the suit — in

fact before it came into legal existence by the consolidation of the several companies out of which it was formed. As to the smaller mortgage, the one for eighty dollars, the Company accepted a conveyance of the land upon which it rested, went into possession of the land, has since then continuously claimed title thereto, never made objection on the score of · the non-cancellation of the mortgage until the institution of this suit, issued passes one year in accordance with its agreement, and, when asked to continue the fulfillment of the agreement, refused, not upon the ground that the title to the land had not been "straightened up," but because of the prohibition of the Interstate Commerce Act. Such conduct constitutes a waiver of the condition precedent, if it be such, of a straight title, and an acceptance of the covenants to pay off this mortgage, made in the deed of the Oakleys, in lieu of its actual cancellation.

"While the mere fact of taking possession does not in itself amount to a waiver of objections to title, and while other circumstances are usually required to raise the presumption of waiver, if the purchaser does enter into possession under the contract with knowledge of a slight defect in the vendor's title or a slight incumbrance upon it, he will be held in many cases to have waived his objections, and will be deemed to have accepted the title as he knew it existed, intending to rely, in case of failure, upon the covenants of warranty for redress." Warvelle on Vendors, vol. 1, 330.

As to the third objection, it is sufficient to say that the agreement to convey the additional land was upon condition that the Railroad Company would furnish plaintiff with a "reasonable written assurance" that a certain other railroad should be operated by the Missouri Pacific Railway Company, and that a water station should be located and maintained upon the

land to be conveyed; and it nowhere appears that such assurance was given, or such water station located. The performance of these stipulations was .a condition precedent resting upon it which the Company should have pleaded and proved. It did not do so.

There was no defect of parties plaintiff, as claimed by the defendant. While the contract was executed by the Curry brothers jointly, and they were all under obligation to see to its discharge on their part, yet, when fully executed by them, each one had a distinct and separate cause of action to compel its fulfillment by the Company in his own behalf. The compensation to be paid for their joint act was to be paid to them separately; and none of them had an interest in the compensation to be paid to the others.

3. Joint contract may be sued on separately.

" Where, in a contract, two of the three contracting parties agree to perform certain services for the third, and each of the two is to receive therefor a separate and distinct compensation, it is not necessary that both of them join in a suit for such compensation; but either may maintain a separate action for the amount due him." *Richey v. Branson*, 33 Mo. App. 418.

The Company cannot excuse itself upon the score of the Interstate Commerce Act. That act forbids the gratuitous issuance of railway passes, not their issuance for a moneyed or other valuable consideration. The transportation in question was paid for by a conveyance of land; and does not, therefore, come within the prohibitive terms of the law behind which the Company endeavors to shelter itself.

4. Railway passes issued for consideration not prohibited.

The rejection of some of the evidence offered by plaintiff in proof of damages was error. The contract was for the issuance of passes and the renewal of the

5. *Contract to procure passes may be sued on, when.* same from year to year. In that respect it may be likened to a contract to pay in installments. Ordinarily, in such cases, suits may be brought to recover for the successive and separate breaches of the contract. The injured party may not, however, charge a violation of the obligations which have not yet matured, and anticipate the injuries he may sustain thereby. For such defaults as have occurred he is entitled to sue, and to prove, as a measure of his damages, the value to him of the transportation which has been refused.

The plaintiff proved a valid contract, a compliance with its terms upon his part, and a breach of the same by defendant; and he should have been allowed to submit his claim of damages to the jury. The case is therefore reversed and a new trial ordered.