## HELIKER-JARVIS SEMINOLE CO. v. LINCOLN *et al.*

No. 1491. Opinion Filed September 11, 1912.

(126 Pac. 723.)

**INDIANS—Lands—Inheritance—What Law Governs.** Chapter 49 of the Laws of Arkansas (Mansf. Dig.), entitled "Descent and Distribution," controls the descent of land allotted to a member of the Seminole Tribe of Indians, not of Indian blood, who died on the 23d day of August, 1903, after receiving his allotment.

(Syllabus by the Court.)

Turner, C. J., dissenting.

*Error from District Court, Seminole County;*
*Robt. M. Rainey ,Judge.*

Action by the Heliker-Jarvis Seminole Company against Peter Lincoln and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

*Crump, Rogers & Harris,* for plaintiff in error.

*Willmott & Wilhoit,* for defendants in error.

KANE, J.   On March 3, 1909, the Heliker-Jarvis Seminole Company, a corporation, plaintiff in error, sued Peter Lincoln, Nancy Bruner, Plenty Fay, Alex Fay, John Fay, Albert Carolina, and Peter Carolina in the district court of Seminole county for the partition of 160 acres of land in said county, the allotment of Washington Lincoln, alleging itself to be the owner in fee of an undivided twenty-three forty-fifths thereof by virtue of a transfer to it of the title of defendants Albert Carolina, John Fay, and other alleged heirs at law of said Washington Lincoln, deceased, all duly enrolled citizens of the Seminole Tribe, but not of Indian blood.   After the cause was at issue, there was trial to the court upon agreed facts, and judgment rendered and entered "that upon the death of the allottee, Washington Lincoln, the land sought to be partitioned passed in fee simple to the defendant Nancy Bruner as the nearest of kin to the deceased allottee; and that the plaintiff company has no interest in said land; and that the defendants, other than Nancy Bruner, have no interest in said land; and that upon the prayer of the said defendant Nancy Bruner the petition of the plaintiff should be dismissed.   It is therefore considered, ordered, and adjudged that the said Nancy Bruner is the sole and only heir at law of the deceased allottee, Washington Lincoln, and inherited the land sought to be partitioned; that the plaintiff has no interest in the land sought to be partitioned; and that this petition be, and the same is hereby, dismissed at the cost of the plaintiff."   This upon the theory that the Seminole tribal law for the distribution of personal property governed the devolution of the allotment, instead of chapter 49, Mansfield's Digest of the Laws of Arkansas, as contended for by the plaintiff; and that Nancy Bruner, being the nearest of kin to the deceased, was the sole heir of his estate.

This was error. It seems quite clear that, where a duly enrolled Indian of the Seminole Nation died on the 23d day of August, 1903, after receiving his allotment, the devolution thereof was governed by chapter 49 of Mansfield's Digest of the Laws of Arkansas, entitled "Descent and Distribution." The lawyers of the Seminole Nation seem to entertain and be about equally divided between three theories in regard to the devolution of Seminole estates: (1) That section 2 of the act of Congress of June 2, 1900, entitled "An act to ratify an agreement between the Commission to the Five Civilized Tribes and the Seminole Tribe of Indians" (chapter 610, 31 St. at L. 250), provides a complete scheme for the devolution of all lands where descent was cast after December 31, 1899, whether allotted or not; (2) that chapter 49, *supra,* applies to estates of the class now under consideration; and (3) the descent is governed by the old tribal laws of the nation.

It has been held by this court, correctly, we think, that section 2, *supra,* does not control the descent of lands allotted to a member of said tribe of Indians who died after the 31st day of December, 1899, who had received his allotment prior to his death. *Bruner et al. v. Sanders et al.,* 26 Okla. 673, 110 Pac. 730. We can find very little support for the theory that the old tribal laws apply. These laws were enacted by the Seminole Indians prior to the ownership of lands in severalty by the inhabitants of that nation, and are poorly calculated to meet the situation which afterwards arose when individual ownership was provided for. We are unable to gather from any act of Congress, or its agreements or treaties with the Seminoles in relation to the allotment of their lands, that it was the intention of Congress or the Indians that these tribal laws should supply rules for the descent and distribution of allotted lands. The original agreement with the Creeks contained a provision to that effect, which was afterwards repealed by the Supplemental Agreement, and the laws of Arkansas substituted. By section 31 of the act of Congress of May 2, 1890 (chapter 182, 26 St. at L. 81), certain general laws of the state of Arkansas, among them chapter 49, entitled "Descent and Distribution," were extended over and put in force in the

Indian Territory, with the limitation that "nothing in this act shall be so construed as to deprive any of the courts of the Civilized Nations of exclusive jurisdiction over all cases arising wherein members of said nations, whether by treaty, blood, or adoption, are the sole parties, nor to interfere with the right and power of said Civilized Nations to punish said members for the violation of the statutes and laws enacted by their national councils, where such laws are not contrary to the treaties and laws of the United States."

It might be held that chapter 49, *supra,* was in force from and after the passage of the foregoing act, and furnished the rule for the devolution of such real estate as was held in severalty, both in the federal and Indian courts, until the latter were abolished, without in any way coming into conflict with the above congressional limitation; but this is not necessary, in view of the subsequent acts of Congress on the same subject. By section 28 of the Curtis Bill (Act June 28, 1898, c. 517, 30 St. at L. 504), the tribal courts were abolished; and section 26 of the same act provides that after its passage "the laws of the various tribes or nations of Indians shall not be enforced at law or in equity by the courts of the United States in the Indian Territory." It seems clear that the first of these provisions had the effect of making the laws of Arkansas, theretofore in force in the territory in a limited way, "apply to all persons therein, irrespective of race," and that that section, in connection with the two sections of the Curtis Bill above referred to, entirely abolished all tribal courts and prohibited the enforcement of the laws of the various tribes by the courts of the United States. Thus chapter 49, *supra,* became the general law governing descent and distribution throughout the Indian Territory, except where, like in the Original Agreement with the Creeks, Congress provided otherwise. Section 2 of the act of June 2, 1900, *supra,* cannot in any proper sense be said to constitute a general law of descent and distribution. It is more in the nature of a direction in relation to the allotment of a certain class of Seminole lands and allottees; and its scope, we think, is properly defined in the Bruner case, *supra.*

The judgment of the court below is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.

HAYES, WILLIAMS, and DUNN, JJ., concur; TURNER, C. J., dissents.