**RENTIE et al. v. RENTIE et al.**

No. 8723—Opinion Filed April 2, 1918.

Rehearing Denied May 28, 1918.

(172 Pac. 1083.)

### 1. Bastards — Legitimation — Acknowledgment—Statute.

Under the laws of Arkansas, which were extended over the Indian Territory, the only mode by which an illegitimate child could be made legitimate was by the marriage of the father and mother of such illegitimate child, and an acknowledgment by said father that he was the father of such illegitimate child.

### 2. Bastards — Inheritance — Declaration —Statute.

Where the father of an illegitimate child dies intestate, the only mode by which such illegitimate child can be made an heir of the estate of such father, under the laws of Arkansas, which were extended over the Indian Territory, is for the father to have

made a declaration in writing as provided for in section 2544, Mansfield's Digest, and the said declaration must have been recorded as required by section 2545, Mansfield's Digest.

### 3. Indians—Allotment—Descent.

A duly enrolled Seminole freedman, after receiving his allotment, died in 1901 or 1902, leaving surviving him a widow and a daughter, who had been enrolled as Chickasaws. Held, that the descent was cast under chapter 49, Mansfield's Digest of Arkansas, and the question of whether or not the said widow and daughter are Seminole citizens is not involved in determining the descent of said land.

(Syllabus by Collier, C.)

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action by Isadore Elnora Rentie, by her guardian, and others, against Ollie Rentie and others, with cross-action by Ollie Rentie. Demurrer to evidence sustained, and judgment for defendant Ollie Rentie on her cross-action. Motion for new trial overruled, and plaintiffs bring error. Reversed and remanded, with instructions to render judgment for plaintiffs.

H. C. Thompson and Thomas P. Holt, for plaintiffs in error.

John W. Willmott, for defendant in error Ollie Rentie.

Opinion by COLLIER, C. This is an action brought by the plaintiffs in error against the defendants in error to quiet title in them to lands described in the petition, and for rent; the repective interest claimed by said plaintiffs in said lands being, on the part of Rachel Clark, nee Rachel Rentie, that she was the wife of Robert Rentie at the tiime of his death, he dying intestate in the now present limits of Seminole county in 1902, owning the lands in controversy, and that she was entitled to a dower in the said lands of the said decedent; and the respective interest claimed by Isadore Elnora Rentie in said lands being that she was the only child and heir of Robert Rentie, deceased, and inherited said lands subject to said dower. The case was tried to the court, and upon conclusion of the evidence the defendant demurrer to the evidence, which demurrer was sustained, and judgment rendered for the defendant in error Ollie Rentie, on her cross-action for the lands in controversy, to which the plaintiffs in error duly excepted. Timely motion was made for a new trial, which was overruled and excepted to, and error brought to this court.

Hereinafter the parties will be designated

as they appeared in the trial court. After the case was submitted upon plaintiffs' brief, the defendant, not having filed a brief, nor offered any excuse for such failure, filed a motion to dismiss this appeal upon the following grounds:

"First. Because the case-made herein was never served upon said minor defendant in error, Ollie Rentie.

"Second. Because Jerome Carter and the unknown heirs of John Silas, deceased, parties defendant below, and who were materially affected by the judgment, and who will be affected by the judgment in this court, have not been made parties to this appeal; the case-made not having been properly or legally served upon them, no notice having been given them of the time or place of presentation of the case made for settlement, and no summons in error having been served upon them.

"Third. Because the case-made shows no proper or legal service upon the minor defendant in error, Ollie Rentie, of notice of the time and place of presenting the case-made for settlement."

"Fourth. Because summons in error was never legally or properly served upon said minor defendant in error, Ollie Rentie."

For the reasons hereinafter stated, we are of the opinion that the motion to dismiss is without merit. The record discloses that John W. Willmott, a member of the bar at Wewoka, Okla., was appointed guardian ad litem for the said minor, Ollie Rentie, and the record discloses that John W. Willmott not only acted as guardian ad litem, but appeared and acted in the trial court as the attorney of Ollie Rentie. There being no question that he accepted service of the case-made, signing the same as "attorney ad litem," that he was present at the settling of the same, and that service of the summons in error was properly made upon him, there is no merit in the contention that the case-made was not properly served, that notice of the time of settling of the same was not properly given, or that summons in error was not properly served, so far as Ollie Rentie is concerned.

Jerome Carter and the unknown heirs of John Silas were attempted to be made parties by publication, but the affidavit for the publication is defective. It is averred in the affidavit for the summons by publication:

"That the whereabouts of the defendant Jerome Carter, and the unknown heirs of John Silas, cannot be obtained by affiant; that due diligence has been used by affiant to ascertain the same; "that affiant made several trips to various parts of Seminole county, inquiring of various people of the whereabouts of said heirs, but that no one could tell him anything about them; that both Jerome Carter and John Silas were formerly residents of Seminole county, Okla. their last known place of residence; that the said Jerome Carter and unknown heirs of John Silas, deceased, cannot be served with summons in the state of Oklahoma with due diligence."

These averments are not sufficient, for the reason that the facts of the due diligence used as to service in this state are not set up. It is true that the facts as to diligence in attempting to serve these parties in Seminole county are set up, but there are no facts set up to show that the summons could not be served in the state of Oklahoma, nor is it alleged that Jerome Carter is a nonresident of this state, nor that John Silas had died leaving heirs surviving him, whose names and places of residence are unknown, while it is averred in the affidavit for publication that it is unknown whether or not there are unknown heirs of John Silas. In Nicoll v. Midland Savings & Loan Co. of Denver, Colo., 21 Okla. 591, 96 Pac. 744, it is held:

"Where publication service is relied on solely, and is alleged in the affidavit therefore that, with the exercise of due diligence, the plaintiff is unable to procure service of summons on the defendant within the territory, * * * the facts necessary to show that due diligence was used to obtain personal service should be stated, and, where judgment is rendered against a foreign corporation without such requirements being complied with, it is void."

In J. W. Cordray v. Salia M. Cordray, 19 Okla. 36, 91 Pac. 781, it is held:

"Where publication is relied on, and jurisdiction is sought to be obtained of the defendant in an action by publication service alone, the affidavit for publication, as well as the publication notice, are matters jurisdictional, and, in order to obtain jurisdiction of the defendant in such case, both the affidavit for publication and the publication notice just comply with the provisions of the statute."

The affidavit for the publication not being sufficient, the trial court never acquired jurisdiction of the person of John Silas, deceased, and the judgment rendered against them was void, and therefore it was not necessary that Jerome Carter and the unknown heirs of John Silas be served with the case-made, notice of its settling, or to have served upon them a summons in error. In Rogers, County Treasurer, v. Bass & Barbour Co., 47 Okla., 786, 150 Pac. 706, it is held:

"Where a judgment as to a certain de-

fendant therein is void, service of the case-made upon him is not required."

The motion to dismiss the appeal is denied.

The undisputed evidence is that the deceased, Robert Rentie, was a Seminole freedman, and died seized and possessed as his allotment of the lands involved in this controversy; that Julia Jefferson was the mother of the defendant Ollie Rentie, that she is a Seminole freedwoman, that she knew Robert Rentie during his lifetime, and that Robert Rentie was dead, but she did not know when he died; that up to the time Robert Rentie married Rachel Clark (plaintiff) he lived with his father, John Rentie; that Robert Rentie never lived with witness at any time; that he never carried her around as his wife; that he never called her his wife to any one; that they were not married, and had no intentions of being married, to each other; that Robert Rentie was the father of Ollie Rentie, but that he never admitted it to any one but this witness, and another witness at a different time; that Robert Rentie never contributed anything towards the support of Ollie Rentie, and never claimed her as his child; that this witness was never married to any one but to Thomas Jefferson; that this witness and Robert Rentie did not even keep company together as "sweethearts" before he married Rachel Clark, or any other time; that Rachel Clark was the mother of Isodore Elnora Rentie; that she was the wife of Robert Rentie at the time of his death, which is fixed as March 28, 1902; that she was legally married to deceased near Lima, in the Seminole Nation, in January or February, 1901; that she was living with Robert Rentie at the time of his death, and had lived with him continuously ever since she married him; that Isadore was born about two weeks before Robert died; that she was married to Robert by a preacher named Ellis Stevenson; that the plaintiffs were enrolled in the Seminole Commission Rolls as Chickasaw freedmen.

The court made the following findings of fact:

"That Robert Rentie was a freedman citizen of the Seminole Nation, and received as allotment the lands described in the petition, which lands were situated in Seminole county. That said Robert Rentie, being seized and possessed of said tract of land, died intestate in Seminole county in the year 1902, leaving surviving him the following as next of kin: His daughter, a minor defendant, Ollie Rentie, a duly enrolled Seminole citizen, who was his legitimate child by Julia Williams, a Seminole freedwoman. That said Robert Rentie also left surviv-

ing him his lawful wife, Rachel Clark, a Chickasaw freedwoman, duly enrolled as such, and the minor plaintiff, Isadore Elnora Rentie, also enrolled as a Chickasaw freedwoman.

"The court further finds that upon the death of the said Robert Rentie the said land descended to his heirs, who were Seminole citizens, according to the laws of descent of the state of Arkansas as contained in chapter 49 of Mansfield's Digest, and that Robert Rentie left only one heir, who was a Seminole citizen, to wit, the minor defendant, Ollie Rentie, his daughter, and that said land, upon the death of said Robert Rentie, passed to and was inherited by the said Ollie Rentie in fee simple, and that she is now the owner of said land in fee simple, and entitled to the possession thereof; that neither of the plaintiffs, being citizens and members of the Chickasaw Tribe or Nation of Indians, inherited any right, title or interest in or to said land."

"The court further finds that the minor defendant, Ollie Rentie, is entitled to the immediate possession of all of said land, and to have the title to the same quieted in her as against the plaintiffs and all of her codefendants named in the petition, and to have canceled and removed as clous from her title each and every conveyance mentioned and set out in the plaintiff's petition, and is entitled to judgment for her costs."

Sections 2525, 2544, and 2545 of said laws (Mansfield's Digest of Arkansas) provide:

Section 2525: "If a man have by a woman a child or children, and afterward shall intermarry with her, and shall recognize such children to be his, they shall be deemed and considered as legitimate."

Section 2544: "When any person may desire to make a person his heir at law, it shall be lawful to do so by a declaration in writing in favor of such person, to be acknowledged before any judge, justice of the peace, clerk of any court, or before any court of record in this state."

Section 2545: "Before said declaration shall be of any force or effect, it shall be recorded in the county where the said declarant may reside, or in the county where the person in whose favor such declaration is made may reside."

We have been unable to find any provision of the laws of Arkansas which were extended over the Indian Territory providing for legitimating an illegitimate child other than said section 2525, supra. The uncontradicted evidence is that Ollie Rentie was an illegitimate child; that Robert Rentie never married her mother, or publicly acknowledged Ollie as his child, and consequently the finding of the court that Ollie Rentie was the legitimate child of Robert Rentie is unsupported by the evidence, and

the trial court committed reversible error in so finding.

Not being the legitimate child of Robert Rentie, the only other way—Robert Rentie having died intestate—by which Ollie Rentie could have been an heir to the land in controversy was by Robert Rentie complying with sections 2544 and 2545, supra. It is not attempted to be shown that Robert Rentie made the declaration provided for by said section 2544, supra, and consequently the court committed reversible error in holding that Ollie Rentie is an heir of Robert Rentie, deceased.

There is but one controlling question involved in this litigation. Does the fact that Robert Rentie was an enrolled Seminole freedman, and the plaintiffs were enrolled as Chickasaws, exclude the right of dower on the part of the wife, and inheritance on the part of the child as to the lands in controversy? The finding of the trial court that the plaintiffs being enrolled as Chickasaws excluded them from any interest in the said lands was prejudicial error, and in direct conflict with the holding of this court in the case of Wadsworth et al. v. Crump et al., 53 Okla. 728, 157 Pac. 713, in which it is held:

"The word 'citizen' as used in section 2 of said Agreement, is not limited to persons whose names are found on the rolls prepared under section 1. Citizenship in the Seminole Tribe did not necessarily extend to or invest in the citizen a personal or individual interest in the common or undivided property of the tribe, but might exist independent of any right to participate in the distribution of tribal property."

It is further held:

"A duly enrolled Seminole Indian died July 4, 1901, before receiving his allotment, leaving him surviving a widow and two daughters, who had been enrolled as Creeks. Held, that the daughters were heirs of their deceased father under section 2 of the Seminole Agreement approved by Act Cong. June 2, 1900, and inherited the lands to which their father was entitled to the exclusion of more distant relatives, though enrolled as Seminoles."

At the time of the death of Robert Rentie, the allottee in this case, there were two laws of descent and distribution in force and effect in the Seminole Nation. The laws of Arkansas applied in cases where the allottee died before receiving his allotment, and in such case the descent was limited, by section 2 of the Second Seminole Agreement (Act Cong. June 2, 1900, c. 610, 31 Stat. 250), to Seminole citizens. See Bruner et al. v. Sanders et al., 26 Okla. 673, 110 Pac. 730. Where the allottee died after receiv-

ing his allotment, and after 1900, and prior to statehood, the descent was cast under chapter 49, Mansfield's Digest of Statutes of Arkansas, and did not limit the descent to Seminole citizens. See Heliker-Jarvis Seminole Co. v. Lincoln et al., 33 Okla. 425, 126 Pac. 723.

In the instant case the allottee died after having received his allotment, and since 1900, and prior to statehood, and therefore the descent was not limited to Seminole citizens. The trial court so limited it, and held that the plaintiffs, since they were not enrolled as Seminole citizens, were not entitled to inherit. It follows that the trial court committed reversible error in finding that the wife was excluded as to the right of dower, and the daughter as an heir of the lands described in the petition. The court not only wrongfully applied the law of descent, if the descent had been cast under the Seminole Agreement, as the allottee had received his allotment prior to his death, but in addition wrongfully determined the law of descent governing the instant case. The question as to whether or not the plaintiffs are included within the term of "Seminole citizens" is not involved in this case.

This cause is reversed and remanded, with instructions to the trial court to render judgment for the plaintiffs in accord with the views herein expressed.

By the Court: It is so ordered.