## DICKINSON et al. v. ABB et al.

No. 8765—Opinion Filed Oct. 1, 1918.

Rehearing Denied Nov. 19, 1918.

(176 Pac. 523.)

**1. Indians—Allotment—Descent — Act of Congress.**

Section 2 of the act of Congress approved June 2, 1900, entitled "An act to ratify an agreement between the Commission of the Five Civilized Tribes and the Seminole Tribes of Indians" (Act June 2, 1900, c. 610, 31. Stat. 250), controls the descent of lands to which a duly enrolled member of the Seminole Tribe of Indians, who died after the 31st day of December, 1899, before receiving his allotment, is entitled; but said section has no application, and does not control the descent of land allotted to a member of said tribe of Indians who died after this date, but who received his allotment prior to his death—following Bruner v. Sanders, 26 Okla. 673, 110 Pac. 730.

**2. Appearance—Effect—Irregularity in Reviving Action—Waiver.**

After the issues were joined in an action by a Seminole freedman to cancel deeds and mortgages and to quiet the title to her allotted lands, the plaintiff died, being survived by her father, enrolled as a Creek freedman, and brothers and sisters, enrolled as Seminole freedmen. Upon the suggestion of the death, and upon the motion of the father, the court, without notice to the defendants, entered a summary order reviving the action in the name of the father, who filed supplemental pleadings, upon which issue was joined by the defendants. Upon the day of trial the defendants entered into stipulations as to certain evidence to be introduced at the trial, and after the witnesses had been sworn objected to the introduction of any evidence on behalf of the plaintiff, because the father was not the heir and successor of the allottee, and that the action was improperly revived in his name, and that the order of revivor was made without notice and without their consent. Held, that the irregularity in making the order of revivor was waived by the general appearance of the defendants.

**3. Appeal and Error—Deprivation of Cross-Examination—Prejudice.**

It is not prejudicial error, of which the defendants can complain, where during the direct examination of one of the plaintiff's witnesses it is made to appear that he is intoxicated, and on account thereof ordered to jail by the court and thus withdrawn from cross-examination, provided no effort is made by the defendant at a later stage of the trial to have the witness called for cross-examination.

**4. Indians—Signature of Allottee—Forgery—Sufficiency of Evidence.**

Upon consideration of the entire evidence we are convinced that the finding of the trial court, that the signature of the allottee to the deed in dispute was a forgery, and that all of the defendants in the court below had knowledge of the manner in which the forged deed had been obtained, is supported by the evidence, and is correct.

(Syllabus by Galbraith, C.)

Error from District Court, Seminole County; Geo. C. Crump, Judge.

Action to quiet title by Dinah Abb against Joseph J. Dickinson and others, which, after plaintiff's death, was revived in the name of Sam Barnett. Judgment for plaintiff upon findings, and certain defendants bring error. Affirmed.

Warren K. Snyder and Warren & Crutcher, for plaintiffs in error.

Cobb & Cobb, for defendants in error.

Opinion by GALBRAITH, C. Dinah Abb, enrolled as a freedman on the Seminole rolls, commenced this action in the trial court to cancel a deed dated November 5, 1914, and filed for record December 12, 1914, in which she appeared as grantor and W. J. Ryan as grantee; said deed purporting to convey her entire allotment, embracing 202 acres, located in Seminole county, to said Ryan. The ground of attack was that the deed was a forgery. Subsequent deeds made by Ryan, and certain deeds and mortgages which his grantees had executed and placed of record, were also attacked. The prayer of the petition was that the deeds and mortgages be canceled and that the title to said

lands be quieted in the plaintiff. On the 3d day of March, 1916, and after the cause was at issue, Dinah Abb died intestate, and was survived by her father, Sam Barnett, a Creek freedman, and brothers and sisters enrolled as Seminole freedmen.

On the 20th day of March, 1916, the death of Dinah Abb was suggested, and a summary order was made by the judge of said court, without notice, reviving said action in the name of Sam Barnett as heir and representative. After issue had been joined on the supplemental petition, and the case had been called for trial upon those issues, the defendant entered into certain stipulations with the plaintiff as to certain facts to be accepted as true in the trial of said cause as follows, to wit: That the order of revivor had been made without consent and notice to the defendants, and that Sam Barnett was an enrolled citizen of the Creek Nation, and that the land in controversy had been allotted to Dinah Abb as her portion of the lands of the Seminole Nation; that she died about March 3, 1916, intestate, and was survived by her father, and no mother, and by sisters and brothers, enrolled as freedmen Seminole citizens.

After witnesses for both sides had been sworn, the defendants made the following objections:

"I want to object to the introduction of any testimony, for the reason that the suit was not properly revived, and not revived in the name of the sole heir of Dinah Abb, or in the administrator of the estate." (Overruled and exceptions.)

It was then stipulated by the counsel for the respective parties that the abstract of the allotment might be introduced in evidence and considered by the court as evidence, and all of the instruments that the abstract covers might be considered.

At the conclusion of the evidence, the court, without the request of either party, made findings of fact and conclusions of law as follows:

"The court finds that the land in controversy was the allotment of Dinah Abb, a Seminole freedman, duly enrolled as such.

"The court further finds that the deed purported to have been executed by Dinah Abb is an absolute forgery.

"The court further finds that Ryan and George Payne entered into a conspiracy to beat this girl out of this allotment.

"The court further finds that the girl never received a single solitary cent of money on this land.

"The court further finds that all of the parties, or their agents, that show in the record title, had full knowledge of the conditions of how the first deed was acquired."

Judgment was entered upon the findings and conclusions, canceling the deeds and mortgages set out in the petition, and quieting title of the land in the plaintiff as prayed in the petition. That judgment is brought here for review.

It is contended, first, that the judgment should be reversed, because the action was improperly revived in the name of Sam Barnett inasmuch as he was the fathher of the allottee and an enrolled Creek freedman, and the allottee was survived by brothers and sisters duly enrolled as freedman of the Seminole Nation; that they, and not the father, would inherit the land; and that the action should have been revived in their name, and not in his name. It is further contended that the revivor was improperly made, inasmuch as it was without consent and without notice. It is conceded in the brief of the plaintiffs in error that the first question has been decided by this court adversely to their contention. Bruner et al. v. Sanders et al., 26 Okla. 673, 110 Pac. 730; Heliker-Jarvis Seminole Co. v. Lincoln et al., 33 Okla. 425, 126 Pac. 723; Wadsworth et al. v. Crump et al., 53 Okla. 728, 157 Pac. 713. But it is contended that these decisions are wrong, inasmuch as they construe the second paragraph of Act June 2, 1900, c. 610, 31 Stat. 250, limiting the descent of the tribal lands of the Seminole Nation to citizens of that nation, to be applicable only where the allottee dies prior to taking the allotment, and does not apply where the allotment has been made before the death of the allottee; that said act should be construed to apply to the descent of all Seminole allotted lands, without regard to the time of death of the allottee; that a similar provision in the Creek Treaty, being section 6 of the Act of Congress of June 30, 1902, c. 1323, 32 Stat. 501, providing for the disposition of the Creek lands, was so construed by the Supreme Court of the United States in Washington v. Miller, 235 U. S. 422, 35 Sup. Ct. 119, 59 L. Ed. 295; and that this latter construction is more reasonable and should be followed in construing the provision of the Seminole treaty above referred to. Inasmuch as the language of section 6 of the Creek Agreement and section 2 of the Seminole Agreement, are not the same, and the construction contended for would deny to the father the right to inherit from his daughter merely by reason of the artificial distinction of their different citizenships, the argument is not convincing, especially in view of the fact

that section 2 of the Seminole Agreement has received the careful consideration of this court and a definite construction placed thereon. That question is not open for consideration in the instant case. We therefore hold that Sam Barnett, the father, inasmuch as no mother survived the allottee, was her heir, although he was enrolled as a Creek freedman, notwithstanding there were brothers and sisters surviving, members of the Seminole Tribe, and therefore he had a right as heir to have the cause of action revived in his name.

As to the question of the regularity of the order of revivor, section 5285, Rev. Laws 1910, reads as follows:

"When one of the parties to an action dies, or his powers as a personal representative cease before the judgment, if the right of action survive in favor of or against his representatives or successors, the action may be revived and proceed in their name."

The procedure provided in section 5286, is as follows:

"The revivor shall be by an order of the court, if made in term, or by a judge thereof, if in vacation, that the action be revived in the names of the representatives or successor of the party who died, or whose powers ceased, and proceed in favor of or against them."

In the instant case the order seems to have been made in vacation by the judge. Section 5287 authorizes the representative or successor to move for the order. Section 5288 apparently requires notice of the application where the order is not made by consent. Section 5294 reads as follows:

"An order to revive an action, in the name of the representative or successor of a plaintiff, may be made forthwith, but shall not be made without the consent of the defendant, after the expiration of one year from the time the order might have been first made. * * * *"

The foregoing sections of the statute have been construed by this court in Zahn v. Obert et al., 60 Okla. 118, 159 Pac. 298. At page 300 it is said:

"A careful examination of these sections, noticing the phraseology and punctuation, clearly shows that no consent is necessary if the order to revive the action is made before the expiration of one year from the time the order might have been first made. If made with consent either before or after the expiration of one year from the time the order might have been first made, no notice as required in section 5288, supra, is necessary. If made before the expiration of one year without consent, then the notice and service thereof required by section 5288, supra, become jurisdictional and mandatory. It cannot be made at all after the expiration of one year without consent."

It therefore appears that the order of revivor, as made in the instant case, having been summarily made without notice, was irregular, and should have been vacated upon proper application; but it was such an irregularity as might be waived, and was waived by the general appearance made by the defendants in the case, evidenced by the pleadings and their entering into the stipulation as to the evidence above recited.

The court in Brown v. Hillman et al., 29 Okla. 205, 116 Pac. 775. holding that the irregularity in the procedure in reviving an action, is waived by the general appearance of the defendants in the action, quote with approval from the opinion of the Supreme Court of Kansas in Curry v. Kansas & C. P. Ry. Co., 58 Kan. 6, 48 Pac. 579:

"Not until the defendant answered was the question of the lack of revivor and substitution raised in the case. It was then too late. Such an objection is like any other objection to jurisdiction. It must be made before appearance to the merits; for such appearance is a submission to jurisdiction. Instead of demurring to the first amended petition, the defendant should have moved to strike it from the files, for the reason that no order reviving the original action had been made. By filing a demurrer thereto, it pleaded to the legal merits of the cause of action stated in the petition. This was a waiver of the defect which is now urged. W. &. W. Ry. Co. v. Quinn, 57 Kan. 737, 48 Pac. 132."

So in the instant case the defendants, by their general appearance in answering the pleadings, and by their entering into the stipulation as to the evidence, appeared generally in the action and thereby waived any objection to the regularity of the order of revivor, and therefore could not urge such irregularities by objection to the introduction of evidence. To the same effect is the decision of this court in Pioneer Tel. & Tel. Co. v. Davis, 28 Okla. at page 783, 116 Pac. 432. We therefore hold that the irregularity in the procedure in entering the order of revivor in this action was waived by the general appearance of the defendants after the order was made.

Again, it is objected that the court erred in ordering a witness for the plaintiff. one Sanders Sancho, from the stand, without giving the defendants the privilege of cross-examination. The record shows that the witness was called by the plaintiff, and after his examination had proceeded some

time the court took up the examination, and the following proceedings were had:

"Q. You have been drinking to-day? A. I have been drinking for the last two or three days.

"Q. You got any whisky in you now? A. I could not say whether I have any in me or not.

"Q. You think you can tell it now? A. Sir?

"Q. You think you could tell it now? A. What is that, Judge?

"Q. You know what you talking about? A. No, sir; I don't know what you all talking about.

"Q. You scared? A. No, sir, I am not scared.

"By the Court: Mr. Sheriff, take this witness to jail until the further order of the court. Let the record show the court considered the witness very impertinent, drinking some, and could not answer, or so drunk he did not have enough sense to answer the questions."

The record does not show that the defendants made any attempt at a later date to have the witness recalled for cross-examination. It therefore does not appear that they were prejudiced by the action of the court taken in regard to this witness, in the manner and for the reasons as shown by the record.

This being a case of equitable cognizance, where it is the right as well as the duty of this court to weigh the evidence and to render the judgment that should have been rendered in the trial court, we are constrained to state that after a careful consideration of the evidence, our conclusion in regard thereto agrees with that of the trial court. It is clear that the allottee was a negro girl, shown by the rolls to be of age at the date of the deed in question, November 5, 1914, but in appearance not that old; that one of her eyes was crossed, and that on account of this deformity her identity was easily established; that the deed in question recited a consideration of $800 paid, and that no part of this sum was paid; that at the time the deed was signed by the alleged allottee the name of the grantee thereon was one Williams, and that before the deed was placed of record Ryan erased Williams' name and wrote his own name therein as grantee; that the notary public taking the acknowledgment to the deed was uncertain in his identification of the person who acknowledged the execution of the instrument. The original deed, and other original instruments having the genuine signature of the allottee, are in the record, and we are thus enabled to make a comparison of the genuine signature with that in dispute, and after making such comparison and considering all the evidence in the record we are convinced that the finding of the trial court, that the signature to the deed was a forgery, was correct. The business relations of the several defendants, aside from the direct testimony to that effect, justify the finding that all of these parties had knowledge of the manner in which this forged deed for Dinah Abb's allotment was obtained.

The judgment appealed from is therefore affirmed.

By the Court: It is so ordered.