LASITER, Adm'r, v. FERGUSON.

No. 11155—Opinion Filed July 20, 1920.

· Rehearing Denied Sept. 14, 1920.

(Syllabus by the Court.)

1. **Indians—Descent and Distribution—Seminole Allotment.**

Section 2 of the act of Congress approved June 2, 1900, entitled, "An act to ratify an agreement between the Commission to the Five Civilized Tribes and the Seminole Tribe of Indians" (Act June 2, 1900, c. 610, 31 Stat. 250), controls the descent of land to which a duly enrolled member of the Seminole Tribe of Indians who died after the 31st day of December, 1899, before receiving his allotment, is entitled; but said section has no application, and does not control the descent of land allotted to a member of said tribe of Indians who died after said date, but who received his allotment prior to his death.

2. **Courts—Stare Decisis.**

Where judicial decisions may fairly be presumed to have entered into the business transactions of a country and have been acted upon as a rule of contracts, it is the duty of the court, on the principle of stare decisis, to adhere to such decisions without regard to how it might be inclined to decide if the question were new. And this rule obtains, although the court may be of the belief that such decisions are founded upon an erroneous principle and are not sound, for when parties have acted upon such decisions as settled law and rights have been vested thereunder, their inherent correctness or incorrectness in the abstract is of less importance than that the rule of property so established should be constant and invariable.

3. **Indians—Conveyance of Restricted Land —Approval—Validity.**

In the absence of grounds for equitable intervention the approval by the county court of the deed of a full-blood Indian conveying his restricted lands will not be set aside upon the sole ground that the application for such approval was made by counsel for the grantee named in the deed instead of by the Indian grantor.

Error from District Court, Seminole County; J. W. Bolen, Judge.

Action by Fred Lasiter, administrator of the estate of Cotcha Holatka, deceased, against Walter Ferguson to recover land and quiet title. Judgment for defendant, and plaintiff brings error. Affirmed.

C. Dale Wolfe and J. Read Moore, for plaintiff in error.

Davis & Patterson and C. Guy Cutlip, for defendant in error.

KANE, J. This was an action commenced by Cotcha Holatka as plaintiff against the defendant in error, Walter Ferguson, and others claiming under him, for the purpose of recovering a certain tract of land and for quieting title thereto. Pending the action Cotcha Holatka died and the cause was revived in the name of his administrator, Fred Lasiter, the plaintiff in error herein. The cause was tried upon an agreed statement of facts which discloses that the land involved was the allotment of Okfuskey, a full-blood Indian and a member and citizen of the Seminole Tribe or Nation, who died intestate on the 5th day of May, 1910, after receiving his allotment, leaving surviving him no father or mother or issue, his sole surviving kindred being the plaintiff in error, Cotcha Holatka, his brother, who was duly enrolled as a member and citizen of the Seminole Tribe of Indians, and Leah Okfuskey, his wife, who was a duly enrolled member and citizen of the Creek or Muskogee Tribe of Indians. The agreed statement of facts further shows that on the 24th day of April, 1910, Cotcha Holatka executed a deed to an undivided one-half interest in said land to the defendant Walter Ferguson; that on December 12, 1911, Walter Ferguson filed in the county court of Seminole county, Oklahoma, a petition signed and executed by said grantee's attorneys for the approval of said deed; that on the same day an order was entered approving said deed. It was also agreed that the interest of Leah Okfuskey, if any she had, passed by mesne conveyances to the defendant in error, Walter Ferguson. Upon consideration of this agreed statement of facts the trial court rendered judgment awarding the entire tract of land to the defendant in error, Walter Ferguson,

to reverse which this proceeding in error was commenced.

The questions presented for review are stated by counsel for plaintiff in error in their brief as follows:

"First. Did said land descend to said Cotcha Holatka upon the death of Okfuskey, as his only surviving heir, who was a Seminole citizen, under the applicable law at that time, 1910?"

"Second. Is the purported deed, for a one-half interest in said land, to Walter Ferguson, and the purported approval thereof, valid?"

Upon the first proposition it is apparent that the trial court was of the opinion that, Okfuskey having died in 1910 after receiving his allotment, the land descended share and share alike to Cotcha Holatka, the Seminole brother of the deceased allottee, and to Leah Okfuskey, his Creek wife, under the laws of descent and distribution of the state of Oklahoma. This holding was undoubtedly in accord with the prevailing judicial opinion of the highest court passing upon the question at the time the judgment was rendered. Bruner v. Sanders, 26 Okla. 673, 110 Pac. 730; Heliker-Jarvis Seminole Co. v. Lincoln et al., 33 Okla. 425, 126 Pac. 723, and several other cases. This is conceded by counsel for plaintiff in error, but they contend that all these cases have been overruled by implication by the Supreme Court of the United States in Campbell v. Wadsworth, 248 U. S. 169, wherein the facts and the ruling of the court are stated in the syllabus as follows:

"The Seminole Agreement of October 7, 1899, 31 Stat. 250, provides for enrollment by the Commission to the Five Civilized Tribes of 'all children born of Seminole citizens,' up to and including December 31, 1899, and of all Seminole citizens then living, and that the rolls so made, when approved by the Secretary of the Interior, shall constitute the final rolls of Seminole citizens, upon which allotment and distribution of lands, etc., of the Seminole Indians shall be made, 'and to no other persons.' The next paragraph prescribes that, if any member of the tribe die after December 31, 1899, the lands, etc., to which he would be entitled if living, 'shall descend to his heirs who are Seminole citizens.' A father, enrolled only as a Seminole, the roll referring to his wife and family as Creeks, died after that date, leaving a wife and daughters, who were enrolled only as Creeks, their roll describing him as an enrolled Seminole. Both rolls were final; and they, with other evidence, are here regarded as establishing a Creek custom assigning children of mixed marriages the tribal status of their mother. Held, that the father's share of Seminole lands, subsequently allotted, did not descend to the mother or the daughters."

We are unable to agree with counsel that the opinion of the Supreme Court in Campbell v. Wadsworth, supra, overrules by implication the rule announced by this court in the cases cited above. In Bruner v. Sanders, supra, it was held:

"Section 2 of the act of Congress approved June 2, 1900, entitled, 'An act to ratify an agreement between the Commission to the Five Civilized Tribes and the Seminole Tribe of Indians' (Act June 2, 1900, c. 610, 31 Stat. 250), controls the descent of land to which a duly enrolled member of the Seminole Tribe of Indians who died after the 31st day of December, 1899, before receiving his allotment, is entitled; but said action has no application, and does not control the descent of land allotted to a member of said tribe of Indians who died after said date, but who received his allotment prior to his death."

In Heliker-Jarvis Seminole Co. v. Lincoln et al., supra, this court, after reviewing at some length the opinion of Bruner v. Sanders, held:

"Chapter 49 of the Laws of Arkansas (Mansf. Dig.), entitled 'Descent and Distribution,' controls the descent of land allotted to a member of the Seminole Tribe of Indians, not of Indian blood, who died on the 23rd day of August, 1903, after receiving his allotment."

Under the rule thus announced, the allottee in the Campbell Case, supra, having died after the 31st day of December, 1899, before receiving his allotment, the devolution of his allotment was governed by the laws of descent and distribution of the state as modified by section 2 of the Seminole Agreement, as was held by the Supreme Court.

In Heliker-Jarvis Seminole Co. v. Lincoln, supra, it was pointed out that prior to the time these opinions were handed down the members of the bar of the Seminole Nation were about equally divided between three theories in regard to the law governing the devolution of Seminole allotments. But since the affirmation of the rule announced in Bruner v. Sanders, supra, it has been pretty generally accepted as a correct interpretation of the law applicable to the devolution of such lands, and we are not aware of any case involving the precise questions thus settled having been taken to the Supreme Court for review. These cases being accepted as the settled law in this jurisdiction for so many years, it is impossible to estimate the great number of real estate transactions that have taken place in the Seminole Nation on the faith of their correctness.

In these circumstances it is the duty of this court, on the principle of stare decisis, to adhere to such decisions although the court

may. be of the belief, which is not the case, that such decisions are not sound, for when parties have acted upon decisions as settled law, and rights have been vested thereunder, their inherent correctness or incorrectness in the abstract is of less importance than that the rule of property so established should be constant and invariable. 11 Cyc. 755. Believing that the rule laid down by this court is not subversive of the policy of Congress in dealing with this particular tribe of Indians, and perceiving no conflict between the rule announced by the Supreme Court in Campbell v. Wadsworth, supra, and the rule announced by this court in Bruner v. Sanders and the other cases, we are constrained to adhere to the rule announced in our former opinions.

The question propounded by counsel in their second ground for reversal, Is the purported deed of Cotcha Holatka to Walter Ferguson for a one-half interest in said land valid?—must be answered in the affirmative.

The approval of this deed by the county court was not attacked on any equitable ground. As we understand the contention of counsel, their sole ground for setting aside the approval is that the application therefor was made by counsel for the grantee in the deed, and not by the restricted Indian himself. This does not constitute a ground for setting the approval aside. No statute or rule of court has been called to our attention prescribing any formal practice or procedure in such matters. As has been often pointed out by this court, the provision of the federal statute requiring the approval of deeds conveying the restricted lands of full-blood Indians by the county court was merely a regulation by Congress through which it was sought to put the Indian on an equality with his prospective purchasers to the end that the transaction might be an honest one, based upon a sufficient consideration, and to prevent the Indian by reason of his improvidence from being overreached, and to secure to him a fair price for the premises conveyed. Cochran v. Blanck et al., 53 Okla. 317, 156 Pac. 324, and many other cases.

It is not alleged in the pleadings, nor established by the proof, nor urged by counsel in his brief or argument, that this purpose was subverted by the action complained of in this assignment of error.

For the reasons stated, we think the approval of the deed of Cotcha Holatka should not be disturbed.

Finding no reversible error, the judgment of the court below is affirmed.

RAINEY, C. J., HARRISON, V. C. J., and PITCHFORD, JOHNSON, McNEILL, and RAMSEY, JJ., concur.