2011 OK 96

**In the Matter of the ESTATE OF Valatus Merral DICKSION.**

**Thomas Powell and Kolleen M. Mailloux, Appellants/Counter–Appellees,**

v.

**Archie Dicksion, Appellee/Counter–Appellant.**

No. 107,295.

Supreme Court of Oklahoma.

June 25, 2012.

Rehearing Denied June 25, 2012.

As Corrected July 9, 2012.

Yasodhara M. Means, Norman, Nancy K. Anderson, Oklahoma City, Oklahoma, for Appellants/Counter–Appellees.

James W. Carlton, Jr., Brett Agee, Pauls Valley, Oklahoma, for Appellee/Counter–Appellant.

Cameron L. Miller, Denton, Texas, Pro se.

Jeanie Mendes, Wailuku, Hawaii, Interested Party.

KAUGER, J.:

¶ 1 The three dispositive issues presented by this appeal and counter-appeal are whether: 1) the objection to admission of the holographic will was timely;[1] 2) the paternity statute, 84 O.S.2001 215,[2] applies to intestate

---

1. The petition in error seeking review of the denial of the motion for a new trial was filed July 8, 2009. On December 29, 2008, a document labeled as a motion for new trial was filed by appellant, Thomas Powell. It was filed more than ten days after notice of the journal entry, but within the time allowed for an application pursuant to 12 O.S. § 1031.1. A belated new trial motion, if filed within the time prescribed by § 1031.1, may be treated as a timely term-time motion. *Schepp v. Hess*, 1989 OK 28, 770 P.2d 34, 37–38. We construe the motion for new trial as an application pursuant to 12 O.S.2001 1031.1. A journal entry denying the motion for new trial (§ 1031.1 application) was filed on June 8, 2009. A journal entry disposing of a § 1031.1 motion is an appealable event. *Kordis v. Kordis*, 2001 OK 99, ¶ 6, 37 P.3d 866, 869; 12 O.S.2011 Chap. 15, App. 1, Okla.Sup.Ct.R. 1.20(b) (definition and examples of final orders). The petition in error was timely. 12 O.S.2001 990A (A). The motion to dismiss the appeal of Thomas Powell is denied. Appellant Kolleen M. Mailloux states that she consented to Powell's § 1031.1 application. Mailloux did not file a

timely motion for new trial or § 1031.1 application. Mailloux sought to join Powell's application after the time had expired for seeking § 1031.1 relief. The trial court correctly determined that her joinder to Powell's application was untimely. The motion to dismiss Kolleen M. Mailloux's appeal is granted.

2. Title 84 O.S.2001 215 provides:

For inheritance purposes, a child born out of wedlock stands in the same relation to his mother and her kindred, and she and her kindred to the child, as if that child had been born in wedlock. For like purposes, every such child stands in identical relation to his father and his kindred, and the latter and his kindred to the child, whenever: (a) the father, in writing, signed in the presence of a competent witness acknowledges himself to be the father of the child, (b) the father and mother intermarried subsequent to the child's birth, and the father, after such marriage, acknowledged the child as his own or adopted him into his family, (c) the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is

and probate proceedings; and 3) 58 O.S.2001 122 [3] prohibits the appointment of a business partner as personal representative when the will does not make any provisions for such an appointment. We hold that: 1) under the facts presented, the objection to the admission of the holographic will was not untimely; 2) 84 O.S.2001 215 applies to intestate and probate proceedings; and 3) 58 O.S.2001 122 prohibits the appointment of a business partner as personal representative only when the proceedings are intestate or when the business partner is not named personal representative in a will.

## FACTS

¶2 On December 20, 2006, the appellee/counter-appellant, Archie M. Dicksion, (Dicksion/personal representative) filed a petition for the probate of the holographic will of his brother, Valatus Merral Dicksion, in the District Court of Garvin County, Oklahoma. The will was written in ink on four pages of heavily stained notebook paper. The provision naming his daughter as administrator of the estate was marked out. The will was partially dated and purportedly signed by the decedent. [4]

¶3 On January 18, 2007, the will was admitted to probate and Dicksion was appointed personal representative of his brother's estate. According to the petition for probate, the heirs of the decedent consisted of a deceased wife, Estella G. Dicksion, and two adult daughters, Kolleen Mailloux of Los Angeles, California, and Kelli Laine, of Corona, California (Mailloux/Laine). The petition does not mention the decedent's adult son, Thomas Powell of Shreveport, Louisiana (Powell/son). The son was born out of wedlock to Inex Wahlstrom and the decedent in California in 1952 and placed for adoption one year later. [5]

¶4 On February 8, 2007, Mailloux, objected to any further proceedings until the proposed sale of certain real property had been appraised and the circumstances surrounding the execution of the alleged holographic will had been fully and fairly litigated. On March 8, 2007, the trial court determined that the real property in question was not an asset of the estate, but rather belonged to Whispering Pines Ranch, L.L.C. as the record owner. Consequently, it determined that it had no jurisdiction over the sale of the real property. On March 9, 2007, the personal representative filed an application to deter-

---

married, into his family and otherwise treating it as if it were a child born in wedlock, or (d) the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction.
For all purposes, the issue of all marriages null in law, or dissolved by divorce, are deemed to have been born in wedlock.

3. Title 58 O.S.2001 122 provides:
Administration of the estate of a person dying intestate must be granted to some one or more of the persons hereinafter mentioned, and they are respectively entitled thereto in the following order:
1. The surviving husband or wife, or some competent person whom he or she may request to have appointed.
2. The children.
3. The father or mother.
4. The brothers or sisters.
5. The grandchildren.
6. The next of kin entitled to share in the distribution of the estate.
7. The creditors.
8. Any person legally competent.
If the decedent was a member of a partnership at the time of his decease, the surviving partner

must in no case be appointed administrator of his estate.

4. Title 84 O.S.2001 54 provides:
A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this State, and need not be witnessed.
In 1925, the Court held in *In re Estate of Hail*, 1923 OK 689, 106 Okla. 124, ¶ 0, 235 P. 916, that when a holographic will offered for probate is contested on the sole ground that the day of the month is omitted from the date, but the will otherwise complies with the statute and there is no question of lack of mental capacity, undue influence, or duress involved, the omission of the day of the month from the date will not invalidate the will, and it will be admitted to probate. Here, the day was also omitted from the will, however, *Hail* would only be dispositive if the lack of day were the sole contest to the will's admission and it is not.

5. Knowledge of paternity was not an issue in the trial court because the court admitted the DNA testing without any objection from the family. The omitted heir and his half sibling in this cause are aligned.

mine heirs, noting that Powell alleged that he was the son of the decedent and entitled to his share of the estate. The application requested that the court make a determination as to whether the son was the legal heir of the deceased.

¶ 5 On March 29, 2007, Powell filed the application for his share of the estate as an unintentionally omitted child alleging that he was the biological son of the deceased. DNA genetic testing was conducted and the tests determined that Powell was the son of the decedent. On July 3, 2007, at the hearing on Powell's application, the court granted the application finding that Powell was an pretermitted heir and entitled to his statutory share of the estate.

¶ 6 On December 4, 2007, the personal representative filed a petition for an order allowing a final account of the estate, a determination of heirship, and a petition for final decree of distribution and discharge. On January 10, 2008, the appellants, Powell and Mailloux, filed objections to the final accounting and included a list of concerns regarding the estate and the transfer of various properties from the estate.

¶ 7 At this stage of the proceeding, several continuances were granted, objections to a final accounting were filed by additional heirs and the heirs of the deceased's widow, and ultimately the trial court added Whispering Pines L.L.C. and the personal representatives as parties to the probate proceeding. Whispering Pines L.L.C., was owned in half by the decedent and his wife and half by the personal representative/brother. The trial court determined that the assets of the company were so intertwined with the estate assets that the company had to be included as a party to the proceedings.

¶ 8 By November 3, 2008, the objections had been overruled, the final accounting was approved for distribution according to the terms of the will, with the exception of Powell who was awarded his share as an unintentionally omitted heir. The final probate order was filed on December 9, 2008. Two days later, Powell asked for an extension of time and stay of the final accounting so that he could secure a new lawyer.

¶ 9 On December 29, 2008, Powell filed a motion for new trial *pro se* challenging the December 9, 2008, order. Subsequently, on January 20, 2008, Powell, through his new lawyer, filed an amended motion for new trial arguing that: 1) the accounting of the assets of the estate was erroneous; 2) the Court had never ruled on the objections to the holographic will; and 3) the personal representative, as a business partner of the decedent should not have been appointed as personal representative. We treat the motion for new trial as a timely application to correct, open, modify, or vacate the order pursuant to 12 O.S.2001 1031.1.

¶ 10 On May 26, 2009, the application to vacate the order was denied and an order reflecting the ruling was filed on June 8, 2009. On June 11, 2009, the trial court denied the personal representative's oral motion to tax Powell for additional attorney fees incurred by the estate. Instead, it allowed the Powell's attorney fees from his previous lawyer to be paid from Powell's share of the estate.

¶ 11 Powell appealed the trial court's denial of the new trial motion on July 8, 2009, asserting that the trial court committed reversible error: 1) by admitting the holographic will; 2) by appointing the brother/partner as personal representative; and 3) in its valuation and distribution of the estate. Two days later, the personal representative filed a counter-appeal alleging that the trial court erred when it: 1) determined that Powell was an omitted heir; 2) awarded Powell a portion of the estate; and 3) awarded Powell attorney fees instead of imposing fees against Powell.

¶ 12 The Court of Civil Appeals reversed and remanded both appeals for further proceedings, determining that trial court erred when it allowed post-death determination of paternity as a basis for inheritance. On September 8, 2010, Powell filed a petition for certiorari and we granted the petition on December 14, 2010.

## I.

¶ 13 **UNDER THE FACTS PRESENTED, THE OBJECTION TO THE ADMISSION OF THE HOLOGRAPHIC WILL WAS NOT UNTIMELY.**

¶ 14 The personal representative argues that no timely objection to the admis-

sion of the holographic will was made because the document that the objection was contained in did not conform to the requirements of 58 O.S.2001 61.[6] The son insists that the objection was timely; but no evidentiary hearing was ever held regarding the will contest or the will's admission.

¶ 15 We note at the outset that this is not a case in which an unintentionally omitted heir appeared and attempted to contest a will which had already been probated. Had this been the case, 58 O.S.2001 242[7] which provides that if no person contests a will within 60 days after a will has been admitted, the will is conclusive, would have prevented such a result. Rather, the pretermitted heir in the instant cause has been involved in this proceeding since the will was admitted to probate, and 58 O.S.2001 61[8] sets forth the time limits and form of contesting an admitted will to probate. It is true the precise petition provided by § 61 was not filed. However, the meaning and effect of an instrument filed in court depends on its contents and substance rather than on the form or title given it by the author.[9] The legal

6. Title 58 O.S.2001 61 provides:

When a will has been admitted to probate, any person interested therein may at any time within three (3) months from the date the will was admitted to probate contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved a sworn petition in writing containing his allegations, that evidence discovered since the probate of the will, the material facts of which must be set forth, shows:
1. That a will of a later date than the one proved by the decedent, revoking or changing the will, has been discovered, and is offered; or
2. That some jurisdictional fact was wanting in the probate; or
3. That the testator was not competent, free from duress, menace, fraud, or undue influence when the will allowed was made; or
4. That the will was not duly executed and attested.

7. Title 58 O.S.2001 242 provides:

If no person within sixty (60) days after the will has been admitted to probate contests the same or the validity thereof, the probate of the will is conclusive.

8. Title 58 O.S.2001 61, see note 6, supra.

9. *State ex rel. Dept. of Transportation v. Perdue,* 2008 OK 103 ¶ 11, 204 P.3d 1279.

effect of any court filed paper depends on its substance rather than its form.[10]

¶ 16 In one of the Court's earliest cases, *Ginn v. Knight,* 1924 OK 806 ¶ 4, 106 Okla. 4, 232 P. 936, an appeal was filed and the appellee moved to dismiss the appeal because the pleading which was the subject of the appeal was titled "motion of petition," when it was actually an application. However, the Court noted that the instrument was treated as a motion by the trial court throughout the proceedings. The Court held that "the nature of a pleading is not determined by the title given it by pleader, but by the subject-matter thereof."

¶ 17 Here, the document containing the objection was titled "Objection to Application for Sale of Real Estate" which was filed less than 90 days after the will was admitted. However, the objection was premised on the belief that the details and circumstances surrounding the execution of the will were such that the sale of estate property should be stayed until a further examination by the court could be made.[11] A majority of the

10. *State v. Torres,* 2004 OK 12 ¶ 3, 87 P.3d 572; *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107 ¶ 8, 777 P.2d 932; *Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24 ¶ 4, 681 P.2d 757; *Amarex, Inc. v. Baker,* 1982 OK 155 ¶ 18, 655 P.2d 1040; *Boose v. Hanlin,* 1959 OK 166 ¶ 5, 346 P.2d 932.

11. The appellant's Objection to Application for Sale of Real Estate, Record at p. 26, provides in pertinent part:

That said Kolleen Mailloux, objects to the Application for Order Approving Sale of Real Estate that was filed in this Court on January 31, 2007. Kolleen Mailloux requests that said sale not occur until such time as an appraisement of the decedent's real properties be conducted and presented to her review.
Further, Kolleen Mailloux, objects to any further proceedings being conducted in this case until such time as the Court fully examines the details and circumstances surrounding the execution of the alleged holographic will by the decedent. Wherefore, Kolleen Mailloux prays that this Court not approve the pending sale of the decedent's real property until such time as a valid, adequate appraisal has been performed and that the circumstances surrounding the execution of the decedent's alleged holographic will have been fully and fairly litigated, and any other relief the Court may deem just or equitable.

objection references the appellant's desire for a full examination of the will. The objection was not merely to the sale of estate property, but rather the sale of that property based on a potentially invalid will. Although the document was not titled as a petition to contest to the validity of the will and its admission to probate, the subject-matter shows that it was such and should have been treated accordingly. Nevertheless, to be clear, we reiterate that had the pretermitted heir attempted to claim an interest in the estate after probate been concluded the objection would have been untimely and the probate conclusive.

## II.

### ¶18 TITLE 84 O.S.2001 215 APPLIES TO INTESTATE AND PROBATE PROCEEDINGS.

¶19 The son argues that the probate court properly ordered and considered the DNA paternity test to determine that he was an heir. He also insists that the personal representative's challenge to the issue is waived because the personal representative agreed to and consented to the test. The personal representative argues that the probate court could not consider paternity testing in a probate proceeding and even if it could, the son did not establish that he was an heir entitled to inherit from the decedent.

¶20 Because we have determined that the challenge to the holographic will was not untimely, it is possible on remand that the will may be determined to be invalid and inadmissible. If this is the case, the matter will proceed under the intestate statutes. Consequently, we take this opportunity to address DNA testing as it applies to both intestate or probate proceedings.

¶21 The paternity of children born out of wedlock has been of concern since before statehood. Title 84 O.S.1910 215 was codified in 1910 and it remained the same as the territorial version of the law from 1890.[12] The statute addressed inheritance by and from illegitimate children and provided:

Every illegitimate child is an heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in wedlock; but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father after such marriage, acknowledges him as his child, or adopts him into his family, in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, interstate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother respectively, their rights in the estates of all the children in like manner as if all had been legitimate. The issue of all marriages null in law, or dissolved by divorce, are legitimate.

¶22 In 1940, the Court in *Burns v. Lawson,* 1940 OK 459, 188 Okla. 181, 107 P.2d 555, addressed the sufficiency of proof as required under this statute. In *Burns,* the alleged heir commenced an action to be declared the sole heir of Lawson. A written acknowledgment of paternity was alleged to have existed, but neither copy of the instrument nor any witness who saw Lawson sign it was produced. The trial court submitted the question to the jury as to whether Lawson signed, in the presence of a competent witness, an acknowledgment in writing that he was the father. The unanimous verdict was no, and it was affirmed on appeal.

¶23 Section 215 remained unaltered for over 60 years until 1977 when the Legislature amended, 84 O.S. Supp.1977 215 to provide:

For inheritance purposes, a child born out of wedlock stands in the same relation to his mother and her kindred, and she and her kindred to the child, as if that child had been born in wedlock. For like pur-

12. St. 1890 § 6895.

poses, every such child stands in identical relation to his father and his kindred, and the latter and his kindred to the child, whenever: (a) the father, in writing, signed in the presence of a competent witness acknowledges himself to be the father of the child, (b) the father and mother intermarried subsequent to the child's birth, and the father, after such marriage, acknowledged the child as his own or adopted him into his family, (c) the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a child born in wedlock, or (d) the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction.

For all purposes, the issue of all marriages null in law, or dissolved by divorce, are deemed to have been born in wedlock.

¶ 24 *In the Matter of Estate of King,* 1990 OK 138, 837 P.2d 463 we addressed the constitutionality of this version of the statute. The father in *King* was deceased and his will had been presented to probate when his alleged child filed an action for a determination of heirship. After reviewing several United States Supreme Court decisions on sister states' statutes, we held that § 215 was constitutional.[13]

¶ 25 The *King* Court discussed the burden of proof necessary for the child born out of wedlock to inherit by intestate succession. In addressing the burden of proof, the Court noted that one method for a child born out of wedlock to inherit from his father was if "there was a judicial determination of paternity before the death of the father." **The statute does not have this requirement written into it—nor has it ever had such language.** The Court quoted the statute as having required a paternity determination **before the death of the father when no such requirement has ever existed.**

¶ 26 In *In the Matter of Estate of Gertrude Jo Geller,* 1999 OK CIV APP 45, 980 P.2d 665, the Court of Civil Appeals was presented with the argument that § 215(d) would authorize a paternity proceeding against the father despite the fact that the father was deceased. The Court of Civil Appeals noted that:

> [T]he court in *King* stated that section 215(d) requires 'a judicial determination of paternity *before the death of the father.*' 1990 OK 138 at ¶ 12, 837 P.2d at 467 (emphasis added). We cannot agree with White's contention that the court's language is dicta.

The *Geller* Court went on to hold that § 215 "does not appear to contemplate post-death genetic testing, and the Supreme Court has explicitly stated that it does not."

¶ 27 Here, the Court of Civil Appeals also expressly relied on *King*'s erroneous language which added the requirement that paternity be determined prior to the father's death. The statute does not have such a requirement written into it and to the extent *King* and *Geller* suggests that it does—they should be overruled and are hereby overruled.

---

13. *In the Matter of Estate of King,* 1990 OK 138, 837 P.2d 463, The Court said in ¶ 10 that:

Section 215 of title 84 does not violate the Equal Protection Clause of the federal Constitution. The statutory provisions in Lalli required a determination of paternity before the father's death. The United States Supreme Court held that those provisions did not violate the equal protection clause of the fourteenth amendment. Section 215 is less restrictive than the provisions upheld in Lalli. Further, section 215 meets the test articulated in the Trimble, Lalli, and Reed: Special burdens placed on children born out of wedlock as a prerequisite to taking from an alleged father's estate must be substantially related to a legitimate state interest. The orderly disposition of estates is a legitimate state interest which justifies "limitations on the time and the manner in which claims may be asserted." In the present case, since the father is dead, the special burdens placed on children for inheritance purposes under section 215 are acceptable for purposes of the fourteenth amendment. Unlike the statutory provisions under attack in Trimble and Reed, section 215 does not unnecessarily exclude 'some significant categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws.' As in Lalli, the statutory provision under attack here is substantially [837 P.2d at 467] related to a legitimate state interest and does not violate the fourteenth amendment. (Citations omitted.)

¶ 28 More than 30 years has passed since 1977, and § 215 has not been updated. In the meantime the use of DNA testing has evolved exponentially. The Uniform Parentage Act, 10 O.S. Supp.2006 7700–101 *et seq.,* became effective in Oklahoma in 2006. The Act, expressly applies to parental determinations in this state. It states that **all courts shall apply the law to determine parentage**—neither intestate nor probate proceedings are excluded from this requirement.[14] Under the Act: 1) all children, whether born to parents who are married or not are treated the same;[15] 2) paternity testing applies for all purposes of establishing a parent-child relationship;[16] and 3) paternity testing expressly includes DNA testing of deceased individuals.[17] It is completely illogical to allow posthumous genetic DNA testing under the Uniform Parentage Act, but not to allow it in intestate and probate proceeding when the statute expressly allows an heir to prove heirship via paternity proceedings.

¶ 29 Section 215 merely requires a judicial determination of paternity. It does not limit that determination to paternity proceedings in which a parent is seeking child support or to any other proceeding in which paternity may be asserted. Rather, § 215 is part of the probate code. The Legislature, when it updated § 215 in 1977, must have known by the late 1970's that paternity testing had advanced since 1910, and would continue to advance. Clearly, the change in the statute was broad enough to encompass this evolution of paternity testing. Even if one were not inclined to overrule *In the Matter of Estate of King,* 1990 OK 138, 837 P.2d 463 and *In the Matter of Estate of Gertrude Jo Geller,* 1999 OK CIV APP 45, 980 P.2d 665, the enactment of the 2006 Uniform Parentage Act has done so.

¶ 30 Courts have embraced DNA testing to determine heirship.[18] Here, Powell alleged that he was the natural son of the decedent.[19]

**14.** Title 10 O.S. Supp.2006 7700–103 provides:
A. The Uniform Parentage Act applies to determination of parentage in this state.
B. The court shall apply the law of this state to adjudicate the parent-child relationship. The applicable law does not depend on:
1. The place of birth of the child; or
2. The past or present residence of the child.
C. The Uniform Parentage Act does not create, enlarge, or diminish parental rights or duties under other laws of this state.
D. The district or administrative courts are authorized to adjudicate parentage under the Uniform Parentage Act.

**15.** Title 10 O.S. Supp.2006 7700–202 provides:
A child born to parents who are not married to each other has the same rights under the law as a child born to parents who are married to each other.

**16.** Title 10 O.S. Supp.2006 7700–203 provides:
Unless parental rights are terminated, a parent-child relationship established under the Uniform Parentage Act applies for all purposes, except as otherwise provided by the laws of this state.

**17.** Title 10 O.S. Supp.2006 7700–509 provides:
For good cause shown, the court may order genetic testing of a deceased individual.

**18.** *In re Estate of Williams,* 26 Misc.3d 680, 891 N.Y.S.2d 268, 272 (N.Y.Sur.2009)(Non-marital child entitled to DNA testing to determine if decedent was the child's father.); *In re Estate of Kingsbury,* 946 A.2d 389, 393 (Me.2008) (Claimant's request to probate court, for exhumation of testator's body for genetic testing to determine if

claimant was testator's biological daughter did not constitute time-barred paternity action.); *In re Michael R.,* 7 Misc.3d 250, 793 N.Y.S.2d 710, 711 (N.Y.Sur.2004) (Recognizing acceptance of posthumous DNA testing results and clear and convincing evidence of paternity.); *Ryan v. Rickman,* 213 W.Va. 646, 584 S.E.2d 502, 504 (2003) (DNA testing revealed child was entitled to share in intestate estate.). *See also, Fort Dearborn Life Ins. Co. v. Turner,* 521 F.SupP.2d 499, 503 (E.D.N.C.2007) (Posthumous paternity testing allowed to determine paternity of illegitimate child for life insurance policy.); *Ashley v. Mattingly,* 176 Md.App. 38, 932 A.2d 757 (2007) (Recognizing that estates and trusts statutes allow trial court discretion to order genetic testing if it is in the child's best interests.); *In re Estate of Jotham,* 722 N.W.2d 447, 452 (Minn.2006) (Parentage Act must apply in its entirety to determine paternity for purposes of intestate succession.).

Kellog, Thomas, Determination of Heirship, 68 Am.Jur. Proof of Facts 3d 93 (2002) § 8 Use of scientific evidence to determine pedigree explains that modern courts permit scientific evidence such as genetic test results to be admitted as evidence of pedigree, a movement that has been building since the 1940's.

**19.** The record indicates that Powell was born out of wedlock and subsequently adopted. Details regarding the adoption are not provided. Neither party takes issue with Powell's ability to be both adopted and an unintentionally omitted heir from his natural father. *Estate of Flowers v. Clinkingbeard,* 1993 OK 19, ¶ 10, 848 P.2d 1146 [Adopted children may not be eliminated as beneficiaries or devisees absent a clear and explicit

His paternity was established with the use of DNA from his father's brother. If the Legislature decides to exclude intestate or probate proceedings from the current paternity testing laws, it may do so. Until then, posthumous paternity testing is expressly authorized by statute.[20] The trial court's decision regarding his status as an unintentionally omitted child is affirmed.

## III.

¶ 31 **TITLE 58 O.S.2001 122 PROHIBITS THE APPOINTMENT OF A BUSINESS PARTNER AS PERSONAL REPRESENTATIVE ONLY WHEN THE PROCEEDINGS ARE INTESTATE OR WHEN THE BUSINESS PARTNER IS NOT NAMED PERSONAL REPRESENTATIVE IN A WILL.**

■ ¶ 32 Title 58 O.S.2001 122 [21] provides, in pertinent part, that "... If the decedent was a member of a partnership at the time of his decease, the surviving partner must in no case be appointed administrator of his estate." The personal representative is the decedent's brother, who was also a business partner with the decedent in "Whispering Pines Ranch, L.L.C.," a limited liability corporation. According to an application filed by the personal representative, the decedent was "owner of a 50% interest in" Whispering Pines LLC.

¶ 33 The will's only reference to an administrator and/or personal representative was to the decedent's daughter and it was crossed out. The business partner was not named anywhere in the will as the administrator and/or personal representative. Powell argues that because the personal representative was the decedent's business partner in the limited liability company, the trial court erred in appointing him to serve in that capacity. The personal representative contends that the statutory restrictions of 58 O.S.2001 122 [22] only preclude a business partner serving as personal representative when the decedent dies intestate, without a will.

¶ 34 He also contends that his appointment should not be disturbed because the objection was untimely. Title 58 O.S.2001 104,[23] the statute governing objections to letters testamentary, does not provide a time limit to file an objection.[24] Title 58 O.S.2001 129 provides that objections to the administrator on the grounds of incompetency be filed within 30 days after the administrator has been appointed.[25]

---

expression to do so.]; Title 10A O.S. Supp.2009 § 1–4–906 of the Oklahoma Children's Code provides in pertinent part:
A. The termination of parental rights terminates the parent-child relationship, including:
1. The parent's right to the custody of the child;
2. The parent's right to visit the child;
3. The parent's right to control the child's training and education;
4. The necessity for the parent to consent to the adoption of the child;
5. The parent's right to the earnings of the child; and
6. The parent's right to inherit from or through the child.
Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent....
*See also,* 10 O.S.2001 § 7505–6.5 which relieves natural parents of the ability to inherit from an adopted child through descent and distribution but has not provisions regarding the adopted child inheriting from the natural parent.

20. Title 10 O.S. Supp.2006 7700–509 see note 17, supra.

21. Title 58 O.S. 2001 122 see note 2, supra.

22. Title 58 O.S. 122 see note 2, supra.

23. Title 58 O.S. 2001 104 provides:

Any person interested in a will may file objections in writing, to granting letters testamentary to the persons named as executors, or any of them; and the objections must be heard and determined by the court. A petition may at the same time, be filed for letters of administration, with will annexed.

24. In *Dillow v. Campbell,* 1969 OK 63 ¶ 6, 453 P.2d 710, the Court discussed 58 O.S. 104, but did not discuss any time limit for filing an objection to the appointment of a personal representative.

25. Title 58 O.S.2001 129 provides:

Any person interested may contest the petition by filing written opposition thereto, on the ground of the incompetency of the applicant, or may, at any time within thirty (30) days after an administrator has been appointed, assert his own rights to the administration and pray that letters be issued to himself. In the latter case the contestant must file his petition in the court. The court

¶ 35 The objection here is based on the administrator's status as a business partner with the decedent. While there may be causes in which an objection should be considered untimely, this cause is not one of them. Probate proceedings are equitable in nature.[26] Here: 1) the parties have been objecting to the admission of the will and to the circumstances surrounding its execution since February 8, 2007; and 2) the personal representative did not reveal his status as a 50% interest owner in Whispering Pines Ranch., LLC., at the time of his appointment, but rather about a month later of January 31, 2007, when he filed the Application for Order Approving Sale of Real Estate.[27]

¶ 36 Title 58 O.S.2001 122[28] has not been amended since 1961. Since that time, this Court's case law has recognized the applicability of 58 O.S.2001 122[29] to persons who die intestate **as well as persons who die with valid wills.** For instance, in *In the Matter of the Estate of Haden K. Scott,* 1979 OK 139 ¶ 6, 604 P.2d 846, a case in which the deceased died leaving a will, the Court applied 58 O.S.2001 122 stating:

> We take the clear mandate of these provisions to be that in the appointment of administrator with will annexed, necessitated because of the death of the named executor, the order of preference is governed by 58 O.S.1971 122. The right of

the party best entitled to that appointment under § 122, as a matter of statutory law is mandatory, if otherwise competent, binding on the court and not a matter of discretion. (Citations omitted.)

¶ 37 Although *Estate of Scott* involved the death of an administrator named in the will, the concern was the absence of an administrator to serve as a personal representative. In the absence of a named administrator, the probate court must appoint a personal representative pursuant to the requirements of 58 O.S.2001 122.[30] Here, the will's only reference to an administrator and/or personal representative was crossed out.

¶ 38 As was the case in *Estate of Scott,* there was an absence of administrator to serve as personal representative and the trial court should have relied on the provisions of 58 O.S.2001 122 in appointing a suitable personal representative.[31] Nevertheless, because we have determined that the challenge to the holographic will was not untimely, it may be determined on remand to be invalid and inadmissable and the provisions of § 122 would apply regardless. Pursuant to those provisions, decedent's brother, the business partner of Whispering Pines, L.L.C. should have been prohibited from serving as personal representative. The trial court erred when it appointed the decedent's business partner as the personal representative.

thereof shall set a day for hearing the same and the contestant shall give written notice by mail, postage prepaid, to the known heirs and the original petitioner or administrator, if the appointment has been made, of said contest, and the time and place set for hearing the same, at least five (5) days before said hearing.

**26.** *In the Matter of Speers,* 2008 OK 16, ¶ 8, 179 P.3d 1265; *In re Estate of Holcomb,* 2002 OK 90, ¶ 8, 63 P.3d 9; *In re Estate of Wilder,* 1976 OK 113, ¶ 7, 554 P.2d 788.

**27.** The Objection to Application for Sale of Real Estate filed by the appellant Mailloux on February 8, 2007, provides in pertinent part:
... Furthermore, Kolleen Mailloux, objects to any further proceeding being conducted in this case until such time as the Court fully examines the details and circumstances surrounding the execution of the alleged holographic will by the decedent.
Wherefore, Kolleen Mailloux prays that this Court not approve the pending sale of the decedent's property until such time as a valid, ade-

quate appraisal has been performed and that the circumstances surround the execution of the decedents alleged holographic will have been fully and fairly litigated, and any other relief the Court may deem just or equitable.
Pursuant to 58 O.S.2001 389 when a partnership interest belongs to any estate, the trial judge is required to carefully inquire into the condition of the partnership affairs and to examine the surviving partner.

**28.** Title 58 O.S.2001 122, see note 2, supra.

**29.** Title 58 O.S.2001 122, see note 2, supra.

**30.** Title 58 O.S.2001 122, see note 2, supra. In *Sparks v. Steele,* 1972 OK 127, 501 P.2d 1106 the Court noted that "[t]he right to appointment as administrator is a matter of statutory law, so appointment of the applicant best entitled under Section 122, if competent to serve as such, is mandatory, not discretionary with the court."

**31.** Title 58 O.S.2001 122, see note 2, supra.

## CONCLUSION

¶ 39 The pretermitted son of a decedent and his half sibling challenged the administration of a holographic will of their father by his brother and business partner who was appointed personal representative. After DNA testing confirmed the son's lineage, the trial court declared the son an unintentionally omitted heir and awarded him his statutory share. Nevertheless, the son filed a motion for new trial which was denied. Both the son and the personal representative appealed. We have construed the motion for a new trial as an application pursuant to 12 O.S.2001 1031.1, conclude that the trial court abused its discretion, in part, and hold that: 1) under the facts presented, the objections to admission of the holographic will were not untimely; 2) the paternity statute, 84 O.S. 2001 215, applies to intestate and probate proceedings; and 3) 58 O.S.2001 122 prohibits the appointment of a business partner as personal representative only when the proceedings are intestate or when the business partner is not named personal representative in a will.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; CAUSE AFFIRMED IN PART/REVERSED IN PART AND REMANDED.**[32]

KAUGER, WATT, EDMONDSON, REIF, JJ., SUMMERS, S.J., concur.

TAYLOR, C.J., COLBERT, V.C.J., WINCHESTER, COMBS, JJ., dissent.

WINCHESTER, J., with whom TAYLOR, C.J., COLBERT, V.C.J. and COMBS, J. join, dissenting:

¶ 1 I respectfully dissent. Contrary to the doctrine of *stare decisis*, the majority opinion overrules *In re King*, 1990 OK 138, 837 P.2d 463, and *In re Geller*, 1999 OK CIV APP 45, 980 P.2d 665. *King* construed § 215(d) of title 84.[1] The statute provides in pertinent part that for inheritance purposes, a child born out of wedlock stands in identical relation to his father and his kindred, and the latter and his kindred to the child whenever "the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction." The majority opinion objects to the construction given § 215(d) by *King*, which holds there must be a judicial determination of paternity before the death of the father. The Court's opinion states and emphasizes in bold letters that "The statute does not have this requirement written into it-nor has it ever had such language."[2]

¶ 2 Construing language in statutes and pronouncing what the law means constitutes the essential role of the judiciary in the American government system, and gives precedential effect to those decisions. This process makes the common law what it is. If a new court composed of different members were to overrule each pronouncement of a former court that the new court now finds objectionable, the common law could no longer be relied on to serve as guide to the interpretation of statutes and constitutional provisions. A new composition of a high court would result in lower courts closely examining established case law to determine if the new court would likely sustain or overrule that law based on potentially changed ideology within a new court.

¶ 3 In *Lasiter v. Ferguson*, 1920 OK 269, 79 Okla. 200, 192 P. 197, *cert. den.* 254 U.S. 651, 41 S.Ct. 148, 65 L.Ed. 457 (1920), the Court made this observation about the principle of *stare decisis:*

"... [I]t is the duty of this court, on the principle of stare decisis, to adhere to such [prior judicial] decisions although the court may be of the belief ... that such decisions are not sound, for when parties have acted upon decisions as settled law, and rights have been vested thereunder, their inherent correctness or incorrectness in the abstract is of less importance than that

---

**32.** Our disposition of this appeal renders the personal representative's motion for appeal related attorney fees and costs moot.

**1.** 1977 Okla.Sess.Laws, ch. 36, § 1, 84 O.S.2001, 215.

**2.** Majority opinion, ¶ 25.

the rule of property so established should be constant and invariable."

*Lasiter,* 1920 OK 269, ¶ 8, 192 P. at 199.

¶ 4 In 1990, the *King* Court construed § 215(d) to mean that a proceeding to determine paternity must take place before the death of the father. Since that time, the lower courts and the lawyers of this state have properly treated this pronouncement, in accordance with the tradition of common law, to be binding precedent. The Court of Civil Appeals in *Geller* properly followed that rule. Lawyers must have depended on this pronouncement in drafting wills, and lower courts in probate cases must have followed it in determining how and whether to exclude individuals purporting to be children, grandchildren, or heirs, but born out of wedlock. This new rule promulgated by the majority will certainly produce a re-drafting of wills in an attempt to exclude unknown and unknowable claimants as blood relations in probate cases.

¶ 5 The legislature has had over twenty years to amend § 215(d), if indeed those lawmakers had determined that the *King* court had misconstrued the intention of that branch of government. Failure to amend a statute after its judicial construction constitutes legislative acquiescence to that construction. *R.R. Tway, Inc. v. Oklahoma Tax Commission,* 1995 OK 129, ¶ 13, 910 P.2d 972, 976. Over twenty legislative sessions have passed since the Supreme Court's decision in *King* and over ten sessions since the decision of the Court of Civil Appeals in *Geller,* ample opportunity to change the settled construction of § 215(d), yet the legislature has not seen fit to do so. "Legislative silence, when it has the authority to speak may be considered as an understanding of legislative intent." *Owings v. Pool Well Service,* 1992 OK 159, ¶ 8, n. 10, 843 P.2d 380, 382, n. 10.

¶ 6 The Court of Civil Appeals in the cause now before us, held that a judicial determination of paternity after decedent's death based primarily on the testimony of the putative heir's biological mother and on the DNA results is not permitted as a basis for inheritance under § 215(d). It constitutes a post-death determination. This holding, based on

*King,* properly reflects the current case law. A post-death determination leaves no opportunity for a man to defend against a DNA determination of parentage. Aside from men who conceive children outside of wedlock, there are men who are sperm donors, whose purpose is to provide an opportunity for children to childless couples. The Artificial Insemination statutes provide that the information is not open to the general public, 10 O.S.2001, 553, and that any child born as a result of the process shall be considered for all legal intents and purposes to be the naturally conceived legitimate child of the husband and wife, 10 O.S.2001, 554. If the donor is not deceased, he may use these statutes as a defense, but if he is deceased, under the majority opinion, the DNA test could be used to prove parentage without a defense available to the true heirs, who may not be aware of the circumstances of conception. Today's rule opens the door for post-death claims by an unknown number of potential heirs. If sperm is frozen, it is possible for conception to occur after the death of the sperm donor.

¶ 7 The majority opinion has overruled an established rule of law for the orderly disposition of property at death. The cases have not been overruled for extraordinary cause, only because the majority disagrees with the previous result. This new holding creates uncertainty for those planning the disposition of their estates, and those rightfully interested in those estates. The door is now left open for litigation resulting in the depleting of estate assets over claims by putative heirs seeking to prove the deceased is their father. These problems should be left to the legislature, which can craft a comprehensive solution, not this Court, which has unnecessarily created a problem that did not exist prior to this date.

COMBS, J., Joined by TAYLOR, C.J., COLBERT, V.C.J., WINCHESTER, J., dissenting:

¶ 1 I must respectfully dissent. The majority opinion authorizes a determination of paternity as a basis for intestate succession and inheritance, post-death, a position I cannot support.

¶ 2 Appellant Powell, sought a share of Decedent's estate, as an omitted heir, under 84 O.S. 132, claiming he was born out of wedlock to a woman who gave him up for adoption, and Decedent was his biological father. Subsequent to the decedent's death, and with the aid of DNA testing performed on the Decedent's surviving brother, Archie Dicksion, appellant established his theory of paternity. Appellant sought a share of Decedent's estate as an omitted heir.

¶ 3 Pursuant to the provisions of 84 O.S. 2001, 215, in order to establish his omitted-heir status, the appellant must successfully prove one of four methods.

¶ 4 84 O.S.2001, 215 provides in pertinent part:

> For inheritance purposes, a child born out of wedlock stands ... in identical relation to his father ..., whenever: (a) the father, in writing, signed in the presence of a competent witness acknowledges himself to be the father of the child, (b) the father and mother intermarried subsequent to the child's birth, and the father, after such marriage, acknowledged the child as his own or adopted him into his family, (c) the father publicly acknowledged such child as his own, receiving it as such, with the consent of his wife, if he is married, into his family and otherwise treating it as if it were a child born in wedlock, or (d) the father was judicially determined to be such in a paternity proceeding before a court of competent jurisdiction.

¶ 5 In *Matter of Estate of King*, 1990 OK 138, ¶ 12, 837 P.2d 463, 467, in an opinion authored by Justice Hodges, we held:

> Section 215 provides ... (4) there is a judicial determination of paternity *before the death of the father* ... (Emphasis added.)

¶ 6 In the present matter, Powell seeks to establish his right to inherit under the fourth method, specifically with the use of DNA testing, conducted after the death of his alleged father.

In *In the Matter of the Estate of Gertrude Jo Geller*, 1999 OK CIV APP 45, ¶¶ 11–17 and 24, 980 P.2d 665, 669–670, the Appellant, Holly White, sought to determine heirship by reason of a sexual encounter between her mother and Jay Myers, the son of the Gertrude Geller. Mr. Myers had predeceased his mother, Ms. Geller by some thirty-seven years. Ms. White sought to prove heirship by exhumation of her alleged father's body. The court stated with regard to Section 215(d):

> As section 215(d) is phrased—"the father *was* judicially determined to be such in a paternity proceeding ..."—it does not appear to contemplate post-death genetic testing ..." (Emphasis original.)

I agree with this interpretation.

¶ 7 The majority assert the Uniform Parentage Act, 10 O.S. Supp.2006, § 7700–101 et seq., which became effective in 2006, now specifically applies to paternity determinations in probate matters. The majority states it is illogical to allow posthumous genetic DNA testing under the Uniform Parentage Act, but not to allow it in probate actions in which the statute expressly allows an individual to prove heirship via paternity proceedings. What is illogical is the concept that a father would not have the opportunity to be heard in paternity proceedings, notwithstanding technology has advanced to such levels as to establish his relationship to a child born out of wedlock with a high degree of certainty.

¶ 8 Our laws of succession allow him the opportunity to dispose of his assets in a knowing manner. See 84 O.S. 41. The right to make a will includes the right to make it according to the testators own desires, subject only to statutory restrictions. *Ward v. Cook*, 1931 OK 575, 3 P.2d 728, 152 Okl. 234. This was the intent of the legislature in stating "the father *was* judicially determined to be such in a paternity proceeding before a court of competent jurisdiction." (Emphasis original.) If the parent-child relationship had been established prior to his death, the father could make disposition of his estate with the knowledge of the relationship. Section 215 applies to "omitted children" a putative father, once determined by a court of competent jurisdiction to be the father, would have the opportunity to provide for this child or disinherit the child in accordance with 84 O.S. 132.

¶ 9 The United States Supreme Court, in upholding the constitutionality of a New York statute which provided for a procedure during the lifetime of the father to make an order of filiation declaring paternity in a proceeding brought during the pregnancy of the mother or within two years from birth of the child,[1] addressed a similar issue in *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

¶ 10 The United States Supreme Court addressed the greatest concern how to achieve finality of a decree in any estate when there always exist the possibility, however remote, of a secret child born out of wedlock hidden in the buried past of a parent or an ancestor of a class of beneficiaries. Finality in a decree of distribution is essential, since title to real property passes under such decree.[2] See; *Lalli v. Lalli, supra.*

¶ 11 The provisions of § 215(d) provide a requirement designed to ensure the accurate resolution of claims of paternity and to minimize the potential for disruption of estate administration. Accuracy and finality in estate administration are enhanced by placing paternity disputes in a judicial forum during the lifetime of the father. Fraudulent assertions of paternity will be much less likely to succeed, or even to arise, where the proof is put before a court of law at a time when the putative father is available to respond, or to react to a judicial determination of paternity, rather than first brought to light when the distribution of the assets of an estate is hanging in the balance.

¶ 12 A post-death determination of paternity based upon scientific testing, although likely accurate, does not afford the father the basic opportunity to be heard or to change his testamentary plans after a court of competent jurisdiction has made a determination of paternity. A child's right to inherit should not outweigh an individual's right to dispose of their property as they feel appropriate.

¶ 13 To follow the majority's interpretation there would be little if any finality to the distribution of ones estate if, through the advances of science, one could assert heirship and entitlement for years or decades after the death of the putative father. How would a putative father disinherit all "unknown issue?" The basic principles of due process would allow a man who has been determined to be a father at a paternity proceeding to make a disposition of his estate in light of a court's decision.

¶ 14 Without a determination of paternity, prior to the death of Valatus Merral Dicksion, Powell is not an heir and has no standing in the probate proceeding. A right to inherit property is granted solely by statute. *Matter of Estate of Baxter*, 1992 OK CIV APP 15, ¶ 17, 827 P.2d 184, 187. Succession to estates is strictly a matter of statutory regulation, which cannot be changed by courts. *In Re Felgars's Estate*, 1954 OK 193, ¶ 22, 272 P.2d 453, 456; *Matter of Estate of Swartz*, 1994 OK CIV APP 7, ¶ 3, 870 P.2d 179, 180.

¶ 15 I respectfully dissent.

---

1. N.Y. Est., Powers & Trusts Law § 4–1.2 (McKinney 1967)

